## GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY *v.* SMILEY.

1. Under the Civil Code (1910), § 4497 all actions to recover damages for personal injuries must be brought within two years after the right of action accrues.

2. Under the Federal control act (Fed. Stat. Ann. 1918 Supp. p. 757) all actions at law or suits in equity can be brought against common carriers under Federal control as theretofore provided by law; and no defense can be made thereto on the ground that the carrier was an instrumentality or agency of the Fede. al Government.

3. Section 206 (f) of the act of Congress passed February 28, 1920 (Fed. Stat. Ann. 1920 Supp. p. 79), which provides that "The period of Federal control shall not be computed as a part of the periods of limitations in actions against carriers or in claims for reparation to the Commission for causes of action arising prior to Federal control," applies only to Federal courts.

4. The court erred in overruling the demurrer to the petition.

No. 2302     August 11, 1921.

Action for damages. Before Judge Cranford. City court of Valdosta. October 23, 1920.

*J. E. Hall, Patterson, Copeland & Slater,* and *C. J. Bloch,* for plaintiff in error. *F. S. Harrell,* contra.

Hill, J. Cora Smiley brought suit against the Georgia Southern and Florida Railway Company, in the city court of Valdosta, to recover damages in the sum of $5,000, on account of alleged personal injuries sustained by the plaintiff. The material portions of the petition were in substance as follows: On December 11, 1917, plaintiff purchased from the agent of the defendant at Valdosta a ticket to Lake City, Florida, and was wrongfully directed to a train of the defendant going to Jacksonville, instead of to Lake City. By reason of being directed to the wrong train the plaintiff was ejected by the conductor, and in alighting from the train she sustained certain personal injuries. The petition was filed on June 23, 1920, more than two years after the alleged tort. On the date of the injuries complained of and until November 11, 1918, the United States of America was actively engaged in war with Germany; and on account of the war the physical properties of the defendant were, on January 1, 1918, taken possession of by the United States Government and were operated by the Government through its director-general of railroads from that date until March 1, 1920, and the agents of the defendant became the agents of the United States government, and no service could be perfected upon the defendant during that period. It

was further alleged that under and by virtue of an act of Congress approved February 28, 1920, the statute of limitations was suspended as to the cause of action herein alleged, for and during the period of Federal control of the defendant's properties. Certain acts of negligence which contributed to the injury were alleged; and judgment was prayed against the defendant for the amount of damages set out above. The defendant filed its demurrer to the petition, setting out, among other grounds, that the petition showed on its face that the claim set up by the plaintiff is barred by the statute of limitations of the State of Georgia. The defendant demurred specially to paragraph 12 of the petition, on the ground that the Congress of the United States did not have at the time of the passage of the transportation act, which was approved February 28, 1920, and has not now [the constitutional] authority to toll or change the statute of limitations of the State of Georgia, as related to the cause of action attempted to be set up in the petition. The demurrer was overruled by the trial court upon each and every ground, both general and special; and the defendant excepted.

The petition alleged that the cause of action arose on December 11, 1917. The petition was filed on June 22, 1920, more than two years after the date of the alleged injury. The Civil Code (1910), § 4497 declares that actions for injuries done to the person shall be brought within two years after the right of action accrues. The suit is therefore barred, unless the above statute is tolled by the transportation act of Congress passed in 1920. That act provides that "The period of Federal control shall not be computed as a part of the periods of limitations in actions against carriers, or in claims for reparation to the Commission for causes of action arising prior to Federal control." Fed. Stat. Ann. 1920 Supp. p. 79 (f). The question arises, therefore, whether the above act of Congress declaring the suspension of the statute of limitations is binding on the State courts. On March 21, 1918, Congress passed an act (Fed. Stat. Ann. 1918 Supp. p. 757) known as the Federal control act. In section 10 it is provided: "That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act

applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers, and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government. Nor shall any such carrier be entitled to have transferred to a Federal court any action heretofore or hereafter instituted by or against it, which action was not so transferable prior to the Federal control of such carrier; and any action which has heretofore been so transferred because of such Federal control or of any act of Congress or official order or proclamation relating thereto shall, upon motion of either party, be retransferred to the court in which it was originally instituted. But no process, mesne or final, shall be levied against any property under such Federal control." From reading the above section of the act of Congress of 1918 it will be seen that actions at law or suits in equity might be brought by and against common carriers, and judgments rendered, as *then* provided by law. And it was also provided that no defense should be made to such suits upon the ground that the carrier was an instrumentality or agency of the Federal Government. It seems, therefore, that the plaintiff in the present case could have brought and maintained her suit in the State courts, even under the Federal statute, at any time within the period fixed by the State statute. Not having brought the suit within the period fixed by the State statute, can the State statute be tolled by the Federal statute of 1920? There is nothing in the Federal act of 1920 which expressly or by necessary implication repeals the authority conferred by the act of 1918 to bring the suit in the State courts according to law. The Federal control act specifically preserves the right of parties who had causes of action, to bring them against the carriers during the period of Federal control and to prosecute such suits to judgment. The act also provides that executions based on judgments so obtained should not be levied upon the property of the carriers in the hands of the Federal Government. See section 10 of the Federal control act, supra. But the act expressly conferred the right to sue and to prosecute the suit to judgment. And see McGregor *v.* Great Northern (N.

D.), 172 N. W. 841, 845, 4 A. L. R. 1635, where it was said
that "Both the President in his original proclamation, and Con-
gress in the act of March 21, 1918, clearly contemplated that the
liability of the carrier should continue. . . Since the liability
continued, it is competent for the suitor to resort to the ordi-
nary legal remedies to establish it," etc. It is argued here that
suit could not have been brought, *because service could not be
perfected* on the defendant during the period of Federal control.
As has been pointed out, the plaintiff had the right to sue with-
in the period fixed by the statute, and also under the Federal
control act; and if she had the right to sue, she would have the
right to perfect service on the defendant if a resident of the
State of Georgia, and it had its principal office located within
the State, where service could have been perfected. This court
will take judicial cognizance of the fact that the Georgia South-
ern and Florida Railway Company is a corporation existing un-
der the laws of this State. See *A. & W. P. R. Co.* v. *A., B. &
A. R. Co.,* 124 *Ga.* 125 (52 S. E. 320).

In *Small* v. *Slocumb,* 112 *Ga.* 279, 281 (37 S. E. 481, 53 L.
R. A. 130, 81 Am. St. R. 50), this court held: "Congress has
power to levy and collect taxes by requiring revenue stamps to
be placed upon certain written instruments, and has power to
prescribe a punishment for the failure or refusal to comply with
that requirement, and to provide that such instruments shall
not, unless stamped, be admissible . . in the Federal courts. It
has, however, no power to prescribe rules of evidence for a State
court; and, therefore, the act of Congress which declares that
certain written instruments shall not be received in evidence in
any court until stamped as required by the act is to be under-
stood as applicable to the Federal courts only." In delivering
the opinion of the court Chief Justice Simmons, said: "Under
our system of government, the States retain all powers of sover-
eignty which were not granted to the general government by the
constitution. They had the power to create and establish their
own courts, and to regulate the practice and procedure, and to
prescribe rules of evidence therein. There is nothing in the con-
stitution of the United States which expressly or by implica-
tion gives to Congress the power to prescribe rules of evidence
for the courts of the States. Of course Congress, having the

power to impose stamp duties, has the power to provide for the enforcement of their payment by any necessary and proper means. But while to make unstamped instruments inadmissible in evidence in State courts would doubtless aid in compelling the payment of the tax, we think that such a method of collection is neither necessary nor proper, and is, therefore, not within the power of Congress. The act of 1898 subjects to a penalty any one who fails or refuses to comply with the provisions as to stamping written instruments, and the Federal courts have ample machinery for the enforcement of this penalty. No other method of enforcement would seem to be necessary, but, even if it were, Congress has power to provide that no unstamped instruments shall be received in evidence in any of the Federal courts. Any attempt to extend this provision so as to make it applicable to the courts of the several States can not, therefore, be defended upon the ground that it is necessary. Nor do we think it a proper means of enforcing the stamp act to interfere with the courts peculiarly within the control of the several States, by declaring what shall or shall not be used as evidence in them, or to seek to make the State courts punish a failure to comply with the Federal stamp act by refusing to allow unstamped documents to be used as evidence in them. This, however, is no new question. It has been dealt with by the courts of many of the States. We have searched diligently in the reports of the decisions of the various State courts, and have found but one State court of last resort which has made and adhered to a decision that Congress had the right to prescribe that an unstamped instrument should not be received in evidence in a State court." The Chief Justice (after citing and discussing the case just referred to, Chartiers &c. Co. v. McNamara, 72 Pa. St. 278, 13 Am. R. 673), further said: " In the cases of Clemens v. Conrad, 19 Mich. 170, and Sammons v. Halloway, 21 Mich. 162, Judge Cooley, the great expounder of constitutional law in this country, shows by his reasoning that Congress has no power to prescribe a rule of evidence for State courts, and that the act should, therefore, be construed as intended to apply to Federal courts only. In the former case he said, in part: ' To make an instrument inadmissible in evidence because not sufficiently stamped is, however, quite a different thing from imposing penalties for a breach of the

revenue laws.  The latter punishes the guilty party or compels him to perform his duty to the government; the former imposes what may sometimes be equivalent to a forfeiture of rights upon any party, guilty or innocent, who chances to be so circumstanced that he can not make a showing of his rights in court without the production of the unstamped instrument. . . A law so highly penal, it is to be presumed, has been so framed as clearly to point out all the cases to which it was designed to apply, so as to leave nothing to inference.  In attempting properly to construe it, it is proper to bear in mind the position of the body which enacted it, relatively to the different legal tribunals of the country.  Congress creates the courts which operate within the sphere of Federal sovereignty and administer the judicial power conferred by the constitution of the United States.  For them it prescribes rules of evidence and may establish a course of practice.  It has no such general power as regards the State courts.  Those courts have another origin, and their rules of evidence and courses of proceeding are prescribed by a different legislative body.  Waiving, in the present case, any discussion of the question whether the State courts are not agencies of State government which are beyond the sphere of the taxing power of the nation and fully at liberty to investigate in their own modes, under the laws of the State, the questions of fact which are put in issue before them, we think it a just and reasonable interpretation of the law of Congress that the courts which are precluded from receiving unstamped instruments in evidence are only the Federal courts. . .  We think that a rule of evidence laid down in general terms is to be understood as applicable to those courts only for which the legislature prescribing it has general power to make rules, and not to other courts, not expressly named, over which it has no such general power and with whose proceedings it could interfere, if at all, only in exceptional cases.'  See also Cooley, Const. Lim. (6th ed.) 592 and note."  And see other authorities cited in the *Small* case, supra.  We think that the reasoning in that case, and the other authorities cited in support of it, as to the want of authority of Congress under the constitution of the United States to prescribe rules of evidence and a course of practice in State courts, is applicable to the facts of the instant case.  But the act of Congress of 1920, cited supra, is general in its terms, and does not attempt expressly or by implication to make it apply

to the State courts; and we must conclude, therefore, that Congress in passing that act had no intention to toll the statutes of the States with reference to the time in which damage suits for personal injuries should be brought. And even if Congress *had attempted to do so,* we do not think that it was within its power, under the constitution of the United States, to so toll the statute of this State as to authorize the plaintiff in the present case to bring her suit after it was barred by the State statute quoted in the beginning of this opinion. We think the act of Congress of 1920, being general in its terms, applies to Federal courts only, for which Congress alone can prescribe rules for their guidance. This ruling being controlling of the right of the plaintiff to bring her action at all, it appearing upon the face of the petition that the plaintiff's cause of action, which is a suit for personal injuries, is barred by the statute of this State, it is unnecessary to decide the other question raised, as to whether the petition sets forth a cause of action. From what has been said above it follows that the court erred in overruling the demurrer to the petition.

*Judgment reversed. All the Justices concur.*

Beck, P. J., concurs in the judgment.

Atkinson and Gilbert, JJ., concur specially.