**BELL v. BAKER.    (No. 519–3974.)**

(Commission of Appeals of Texas, Section A. April 2, 1924.)

**1. Army and navy ⬤⟞24—Soldiers' and Sailors' Civil Relief Act applies to state courts.**

Soldiers' and Sailors' Civil Relief Act, § 205 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3078¼e), relating to limitation of actions, was intended to apply to actions in state courts as well as those in federal courts, in view of sections 101, 102 (sections 3078¼aa, 3078¼aaa).

**2. Army and navy ⬤⟞24—Limitation of actions ⬤⟞114—Action against railroad for injuries to soldier not barred two years after discharge in view of Federal Control Act.**

Where plaintiff having cause of action for injuries against railroad was still in the federal army when federal control of railroads began, limitations did not begin to run when he was

discharged from the army, but only at the end of federal control of the railroad, in view of Soldiers' and Sailors' Civil Relief Act, § 205 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3078¼e), and Transportation Act Cong. Feb. 28, 1920, § 206f (U. S. Comp. St. Ann. Supp. 1923, § 10071¼cc), the latter act applying to state courts as well as federal courts.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by James L. Bell against James A. Baker, receiver of the International & Great Northern Railroad Company. Judgment for defendant was affirmed by the Court of Civil Appeals (249 S. W. 246), and plaintiff brings error. Reversed and remanded for trial.

John L. Dannelley, of Laredo, for plaintiff in error.

F. C. Davis and Marshall Eskridge, both of San Antonio, for defendant in error.

CHAPMAN, J. On January 19, 1921, plaintiff in error, James L. Bell, filed his petition in the district court of Webb county, Tex. for damages for personal injuries alleged to have been sustained by him February 9, 1917, against James A. Baker, receiver of the International & Great Northern Railway Company, defendant in error. The defendant in error demurred to plaintiff's petition on the ground that the cause of action was, according to the face of the petition, barred by the two years' statute of limitation. Plaintiff in error filed a supplemental petition alleging that on February 9, 1917, at the time of the injury, he was in the actual service of the United States army, and remained in such service until December 23, 1918, and that on January 1, 1918, the railroad of defendant in error was taken under federal control, and remained under such control until March 1, 1920, and that the periods of such military service and federal control of the railroad should not be computed in any period of limitation. The lower court sustained defendant's exception and dismissed plaintiff's suit, from which action of the court plaintiff appealed to the Court of Civil Appeals for the Fourth Supreme Judicial District of Texas, and that court affirmed the judgment of the lower court. 249 S. W. 246.

Section 10322 of the Soldiers' and Sailors' Civil Relief Act (Barnes' Federal Code 1919 [U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3078¼e]) is as follows:

"The period of military service shall not be included in computing any period now or hereafter to be limited by any law for the bringing of any action by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action shall have accrued prior to or during the period of such service. Act March 8, 1918, c. 20, § 205, 40 Stat."

And Title 2, § 206f, of the Transportation Act of Congress of February 28, 1920 (U. S. Comp. St. Ann. Supp. 1923, § 10071¼cc) is as follows:

"The period of federal control shall not be computed as a part of the periods of limitation in actions against carriers or in claims for reparation to the Commission for causes of action arising prior to federal control."

The question to be determined by this court is as to whether or not the two articles on limitation are constitutional in so far as Congress attempts to apply them to the state courts and whether or not they do apply to the state courts.

Article 6 of the federal Constitution is, in part, as follows:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

We will first discuss the Soldiers' and Sailors' Civil Relief Act.

Section 10314 (4), Barnes' Federal Code 1919 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3078¼aa), in defining the terms of said act, provides that:

"The term 'court' as used in this act shall include any court of competent jurisdiction of the United States or of any state, whether or not a court of record."

And section 10315 (1) of said act (section 3078¼aaa) is as follows:

"The provisions of this act shall apply to the United States, the several states and territories, the District of Columbia, and all territory subject to the jurisdiction of the United States, and to proceedings commenced in any court therein, and shall be enforced through the usual forms of procedure obtaining in such courts or under such regulations as may be by them prescribed."

In Pierrard et ux. v. Hoch et al., 97 Or. 71, 191 Pac. 328, the Supreme Court of Oregon, in passing upon this act, say:

"It is clear that under the war-making power the national Legislature has the authority to provide for the protection of its soldiers, to relieve them from anxiety and annoyance respecting litigation at home, and to make a general rule applicable alike to all those engaged in its service. In this instance it has occupied the whole field, which of necessity excludes all state legislation on the subject. To hold otherwise is to impeach the act of Congress as beyond the powers of that body, a task we should shrink from assuming."

And the Supreme Court of Wisconsin, in passing upon the same act in Konkel v. State, 168 Wis. 340, 170 N. W. 717, say:

"There can be no doubt that Congress, in the exercise of the powers conferred upon it, may prescribe the conditions under which persons in the military service of the United States

shall be subject to the process of courts, whether state or federal. Such provision seems necessarily implied from the provisions expressly granted, to maintain an army and navy. No question as to the validity of the Soldiers' and Sailors' Civil Relief Act is raised, and we see no ground upon which its validity could be successfully assailed."

And in Hoffman v. Charlestown Five Cents Sav. Bank, 231 Mass. 324, 121 N. E. 15, the Supreme Judicial Court, as to said act, used the following language:

"There can be no question of the constitutionality of the act. It is a war measure within the power of Congress, therefore the supreme law of the land. For this reason it governs the foreclosure of mortgages on real estate within the territorial limits of the commonwealth."

[1] Upon a reading of the whole act under consideration it clearly appears that the benefit extended to soldiers and sailors under section 10322 (section 3078¼e) was intended to apply to actions in state courts as well as those in federal courts, and from the authorities above quoted there can be no question but that Congress had power to pass said act, and that it applies to state courts, and we can see no necessity for further discussing this phase of the case, only in so far as a discussion of the other act will apply to it.

[2] The Transportation Act of Congress of February 28, 1920, must be studied as a whole in order to properly interpret it. The act seems to have for its purpose the matter of the termination of federal control, and the adjustment of all matters incident to and growing out of the federal control of railroads, including the time of bringing all suits for causes of action that arose during and before federal control. Section 206 (a) in the following language:

"Actions at law, suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use or operation by the President of the railroad or system of transportation of any carrier (under the provisions of the Federal Control Act, or of the act of August 29, 1916) of such character as prior to federal control could have been brought against such carrier, may, after the termination of federal control, be brought against an agent designated by the President for such purpose, which agent shall be designated by the President within thirty days after the passage of this act. Such actions, suits, or proceedings may, within the periods of limitation now prescribed by state or federal statutes but not later than two years from the date of the passage of this act, be brought in any court which but for federal control would have had jurisdiction of the cause of action had it arisen against such carrier,"

—provides the time in which suits may be brought on causes arising during the federal control, and that suits may be brought in the state courts, and section 206f, above quoted, refers to the limitation in actions arising prior to federal control.

On the 11th of June, 1864 (13 Stat. 123), Congress passed this act, entitled, "An act in relation to the limitation of actions in certain cases":

"That whenever, during the existence of the present rebellion, any action, civil or criminal, shall accrue against any person who, by reason of resistance to the execution of the laws of the United States, or the interruption of the ordinary course of judicial proceedings, cannot be served with process for the commencement of such action or the arrest of such person, or whenever, after such action, civil or criminal, shall have accrued, such person cannot, by reason of such resistance of the laws, or such interruption of judicial proceedings, be * * * served with process for the commencement of the action, the time during which such person shall so be beyond the reach of legal process shall not be deemed or taken as any part of the time limited by law for the commencement of such action."

And in construing said last-named act in Stewart v. Kahn, 78 U. S. (11 Wall.) 493, 20 L. Ed. 176, Justice Swayne used the following language:

"But it has been insisted that the act of 1864 was intended to be administered only in the federal courts, and that it has no application to cases pending in the courts of the states. The language is general. There is nothing in it which requires or will warrant so narrow a construction. It lays down a rule as to the subject, and has no reference to the tribunals by which it is to be applied. A different interpretation would defeat, to a large extent, the object of its enactment. All those who could not sue in the courts of the United States, including the loyal men who were driven out by the insurrection and returned after it ceased, and those of the same class who remained at home during the war, would be deprived of its benefits. The judicial anomaly would be presented of one rule of property in the federal courts, and another and a different one in the courts of the state, and debts could be recovered in the former which would be barred in the latter. This would be contrary to the uniform spirit of the national jurisprudence from the adoption of the Judiciary Act of 1789 down to the present time.

"The act thus construed, it is argued, is unwarranted by the Constitution of the United States, and therefore void. The Constitution gives to Congress the power to declare war, to grant letters of marque and reprisal, and to make rules concerning captures on land and water; to raise and support armies, to provide and maintain a navy, and to provide for calling forth the militia to execute the laws of the Union, suppress insurrections, and repel invasions. The President is the commander-in-chief of the army and navy, and of the militia of the several states, when called into the service of the United States, and it is made his duty to take care that the laws are faithfully executed. Congress is authorized to make all laws necessary and proper to carry into effect the granted powers. The measures to be taken in carrying on war and to suppress insurrection

are not defined. The decision of all such questions rests wholly in the discretion of those to whom the substantial powers involved are confided by the Constitution. In the latter case the power is not limited to victories in the field and the dispersion of the insurgent forces. It carries with it inherently the power to guard against the immediate renewal of the conflict, and to remedy the evils which have arisen from its rise and progress. This act falls within the latter category. The power to pass it is necessarily implied from the powers to make war and suppress insurrections. It is a beneficent exercise of this authority."

The United States Supreme Court, in passing upon the same act in Mayfield v. Richards, 115 U. S. 137, 5 Sup. Ct. 1187, 29 L. Ed. 334, approved the above case in the following language:

"The question thus raised was expressly decided by this court in the case of Stewart v. Kahn, 11 Wall. 493, where it was held that the act applied to cases in the courts of the states as well as of the United States, and that thus construed the act was Constitutional. We are satisfied with the judgment of the court in that case, and are unwilling to question or re-examine it."

And Stewart v. Kahn was cited and approved in Brown v. Walker, 161 U. S. 607, 16 Sup. Ct. 644, 40 L. Ed. 819.

In Wenatchee Produce Co. v. Great Northern Ry. Co. (D. C.) 271 Fed. 784, the court, in passing upon Act Feb. 28, 1920, tit. 2, § 206f, says:

"It is equally well settled that Congress may, as a war measure, extend the period of limitation fixed by the laws of the several states,"

—and cites and approves Stewart v. Kahn.

In Mitchell v. Clark, 110 U. S. 639, 4 Sup. Ct. 170, 312, 28 L. Ed. 279, the court, in passing on an act of Congress (13 Stat. 757, § 7) which in part reads as follows:

"Provided, that in no case shall the limitation herein provided commence to run until the passage of this act, so that no party shall, by virtue of this act, be debarred of his remedy by suit or prosecution until two years from and after the passage of this act,"

—used the following language:

"Had Congress power to, pass such a law? The suit being one which, under the act of Congress, could be removed into the courts of the United States, Congress could certainly prescribe for it the law of limitations for those courts. If for such actions in those courts, why not in all courts? Otherwise there would be two rules of limitation of actions in different courts holding pleas of the same cause."

If the article of the Soldiers' and Sailors' Civil Relief Act under consideration is constitutional and applies to state courts we can see no good reason why the article of the Transportation Act above set out, which was passed by the same legislative body for the

same purpose, should not be entitled to the same construction. That the act wherein it affected limitation of causes was intended to apply to state courts as well as federal courts is clearly shown in the article on limitation of action arising during federal control, as above set out; it will be observed this article and the article under consideration are subdivisions of the same section of the act.

To hold that the article of the act in reference to limitation on causes arising prior to federal control does not apply to state courts merely because state courts are not mentioned in that particular subdivision of the section would have the effect that a citizen of Texas whose cause of action arose the day before federal control began would be barred by limitation at the close of federal control. We do not believe that such was the intention of Congress, nor that such a construction can be placed on the act when considered as a whole.

Congress knew of the conditions that existed during federal control, and at the close thereof, and passed an act removing the railroads from federal control, and to provide a method of disposing of all matters growing out of or affected by federal control, and, the railroads having been taken over by the government as a war time measure, Congress had the constitutional right to pass such act and in same to provide when suits might be filed in state courts on causes of action that arose both before and during federal control.

We have carefully considered the case of Georgia Southern & F. Ry. Co. v. Smiley, 151 Ga. 795, 108 S. E. 273, by the Supreme Court of Georgia, cited by defendant in error, and note that said court holds to the contrary of this opinion, but we think that the act of Congress of June 11, 1864, above set out, is so similar to the Federal Control Act (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p) under consideration that the opinions of the United States Supreme Court on said act of 1864 are a precedent in construing the act before us. We hold that Congress was within its constitutional right in applying the two statutes under consideration to state courts and that they do so apply.

Plaintiff in error was still in the federal army when federal control began, the limitation did not then begin to run against his cause of action until the end of federal control, which was less than 11 months before the filing of the suit, and therefore the cause of action was not barred by the 2 years' statute of limitation.

We recommend that the action of the district court and the Court of Civil Appeals be reversed, and that the cause be remanded for a trial on its merits.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered at

the judgment of the Supreme Court. We approve the holding of the Commission of Appeals on the question discussed in its opinion.