## SPRECKELS SUGAR CO. v. SOUTH ATLANTIC S. S. LINE et al.

### No. 483.

District Court, S. D. Georgia, Savannah Division.

June 10, 1944.

See also 49 F.Supp. 714.

A. R. Lawton, Jr., of Savannah, Ga., for South Atlantic S. S. Line.

Connerat, Hunter & Cubbedge, of Savannah, Ga., for Spreckels Sugar Co.

LOVETT, District Judge.

. This is a libel in personam to recover for damage to a cargo of sugar which moved coastwise from San Francisco, California, to Corpus Christi, Texas, in June 1941, loaded on a vessel of the South Atlantic Steamship Line, under time charter to the Isthmian Steamship Company.

The marshal returned that he had served the Isthmian Steamship Company by serving Strachan Shipping Company, its agent in Savannah, Georgia. The Isthmian company has moved to quash and set aside the marshal's return and to dismiss the libel as to it on the grounds: That it is a foreign corporation and at the time of service had no agent in this district or in the

state of Georgia upon whom service could be made, and was doing no business in the state of Georgia. It was also urged that the court is without jurisdiction of the subject matter, for that the cause of action arose outside of the state of Georgia and bore no relation to any business, if any, conducted by the Isthmian in Georgia; and that to assume jurisdiction would place an undue burden on interstate commerce and would deprive Isthmian of its property without due process of law in violation of the Fifth Amendment.

Evidence has been taken orally and by affidavit. It appears that Isthmian is a foreign corporation. Prior to April 21, 1942, it had between 15 and 20 ships operated by it to call at the port of Savannah, and Strachan Shipping Company was employed as agent for each ship. Strachan did the usual things generally required of such agents, i. e., arrange for the loading and unloading of cargo, book cargo for the vessels, attend to the general needs of the ships and the crews. The libel was served on August 1, 1942. Between April 21 and that date all ships belonging or chartered to the Isthmian company were either requisitioned or chartered by the War Shipping Administration. Since April 21, 1942, the Isthmian company has been acting only as agent—general agent or berth subagent—for the WSA. In such capacity it had authority to appoint subagents when ships, on the business of the WSA, put into ports of call. It sometimes appointed Strachan Shipping Company as subagent for these ships at Savannah, and at other times has appointed another local shipping company.

I find that the Isthmian company ceased to do business in Georgia on its own account when its ships were taken over for use by the WSA prior to the service of the libel in this case. Subsequent to the taking over of its ships, and at the time of service in this case, the Isthmian ships only called at Savannah on the business of the United States government. Isthmian no longer had an agent in this jurisdiction. It had become an agent itself, an agent of the United States. The only business it can be said Isthmian was doing here at the time of service was not as owner or operator of vessels but as an agent of the WSA. Compare Van Horn v. Waterman S. S. Corp., D.C., 54 F.Supp. 376, 1944 A.M.C. 375. Its contract with WSA authorized it to appoint subagents (in ports, for example, where presumably it had no office or regular agency), but these subagents acted for and their appointment was subject to the disapproval of WSA. These sub-agents were not continuously so engaged; their engagements were intermittent; periodically other local shipping companies were engaged instead; they acted pro hac vice and without previous commitment by Isthmian to use them. Indeed Isthmian was only employed ship by ship by WSA. The only commitment Isthmian had from WSA was that, if and when appointed agent for a ship, it would be governed in the performance of its duties by what was known as the general agent's agreement, or berth-sub-agent agreement, of a standardized plan or pattern, as the case might be. Isthmian booked no cargo for the ships of WSA. These ships handled lease-lend cargoes chiefly. When Strachan acted as sub-agent, it was only to attend to the customary owner's requirements, such as acting as ship's husband, etc. There were no cargo operations in connection with their duties. What they did was for the benefit of WSA as owner or operator of the ships. Strachan did receive its pay out of the compensation allowed to Isthmian by WSA for Isthmian's services as berth sub-agent or general agent. The amount Strachan received was fixed by agreement from time to time between Isthmian and it.

No convincing evidence has been offered to show that it would be any undue restraint of interstate commerce, or that Isthmian Steamship Company would be deprived of its property without due process of law if jurisdiction is assumed in this case. On the showing made I have no way of telling what would be the burden imposed upon Isthmian of trying the action here. See United States Merchants' & S. Ins. Co. v. Elder Dempster & Co., 2 Cir., 62 F.2d 59, 61.

Nor am I convinced that jurisdiction should be refused because libellant and respondent are both foreign corporations and the cause of action arose outside of Georgia. The rule in admiralty, unlike in civil suits, is that jurisdiction may be acquired through proper service wherever the respondent may be found or wherever his property or credits can be attached. In re Louisville Underwriters, 134 U.S. 488, 10 S.Ct. 587, 33 L.Ed. 991; Brown v. C. D. Mallory & Co., 3 Cir., 122 F.2d 98, 99(9), 104; Allsman v. Rhodes, D.C., 37

672

F.Supp. 122; 2 Benedict on Admiralty, 6th Ed., Sec. 242, pages 78 and 79, and cases cited. Some reliance has been placed by respondent upon decisions of the Georgia courts, attention being called to the fact that service of a monition in admiralty may be made on any agent of the non-resident defendant in conformity with the state statute authorizing such service in actions at law or in equity. See Louisville Underwriters case, supra; Doe v. Springfield Boiler & Mfg. Co., 9 Cir., 104 F. 684; Insurance Co. of N. A. v. Frederick Leyland & Co., D.C., 139 F. 67; Goetz v. Interlake S. S. Co., D.C., 47 F.2d 753(12, 13, 14), 757. And it should be noticed that the Georgia statute authorizes service on "any officer or agent of such corporation." Ga.Code, Sec. 22-1101. But the Georgia decisions, though at one time in some confusion (Reeves v. Southern Ry. Co., 121 Ga. 561, 49 S.E. 674, 70 L.R.A. 513, 2 Ann. Cas. 207; Louisiana State Rice Milling Co. v. Mente, 173 Ga. 1, 159 S.E. 497), do not support the view that the state courts will refuse jurisdiction of a transitory cause of action where all the parties are non residents and the cause of action arose outside the state. The most recent decisions say that jurisdiction will be assumed unless enforcement of the cause of action would be contrary to the laws and policy of the state. Louisville & N. R. Co. v. Meredith, 194 Ga. 106, 21 S.E.2d 101; Southern R. Co. v. Parker, 194 Ga. 94, 21 S.E.2d 94.

 The obstacle to be overborne here, however, is that Isthmian had no agent of its own in this district upon whom service could be made. The sub-agent appointed by Isthmian was not the kind of agent that would justify bringing Isthmian into court by service upon him. Having ceased to do business here when its ships were requisitioned, and no longer having an agent within the jurisdiction, it could not be served on a cause of action arising outside of the state though the cause of action arose at a time when it was doing business in Georgia. Compare Clarke v. Southern R. Co., 30 Ga.App. 590, 118 S. E. 475; Atlanta, B. & A. R. Co. v. McClelland, 31 Ga.App. 33, 119 S.E. 437. See also Georgia S. & F. R. Co. v. Smiley, 151 Ga. 795, 108 S.E. 273. The agency relationship must exist at the time of the service. Johnson v. Black Diamond Lines, D. C., 36 F.Supp. 721, 1941 A.M.C. 1690. In the Clark and McClelland cases, supra, it was held that after operation of the railroads was taken over by the United States under the Director General of Railroads the agents of the railroads became agents of the United States and could no longer be served in actions against the railroad. There, as here, the carrier ceased to do business in its own right when control passed into the hands of the United States.

In my view the service made upon Strachan Shipping Company as agent of the Isthmian company was unauthorized, and the motion to quash the service should be sustained on the ground that Isthmian had ceased to do business and was without an agent of the kind contemplated by the Georgia statute upon whom service could be lawfully made and which would justify a personal judgment against it.

Let an order be presented.