AMICALE INDUSTRIES, INC., Libellant,

v.

S.S. RANTUM, her engines, tackle, etc., and Ozean/Stinnes—Linien Gemeinschaftsdienst (Ozean—Linie G. m.b.H.—Hugo Stinnes), Respondents.

No. 1177.

United States District Court
D. South Carolina,
Charleston Division.

Oct. 11, 1966.

S. Henry Edmunds, Charleston, S. C., for libellant.

Pledger M. Bishop, Jr., Moore, Mouzon & McGee, Charleston, S. C., for respondents.

### ORDER

SIMONS, District Judge.

A Libel against the S.S. RANTUM and against its owners and operators, the corporate respondent, was filed with the Clerk of Court on December 11, 1962, seeking recovery for alleged water damage to 559 bales of rayon staple fibre shipped from Bremen, Germany to the port of Charleston, South Carolina aboard the RANTUM during the month of November, 1960. The cargo was shipped under Bills of Lading dated October 21, 1960, naming the Libellant as consignee. The Libel was originally served on Palmetto Shipping Company, a local port agent in Charleston, South Carolina, on December 12, 1962. The vessel has never been served with process and has never been seized and attached by the United States Marshal. Therefore, Libellant cannot proceed in this matter in an *in rem* action against the ship and must pursue to its cause as an *in personam* action against the named corporate respondent, a German corporation.

The respondent appeared specially herein to move the court for an order quashing the attempted service of the

citation on grounds that (1) the corporate respondent was organized under the laws of Germany, has no office, officer or agent within the State of South Carolina, and was not present nor doing business in this State so as to vest jurisdiction in this court, and that (2) Palmetto Shipping Company is not, and was not at the time of the attempted service of the citation upon it, an agent of the said respondent upon which service might be made; and in the alternative, respondent moves the court to decline jurisdiction upon ground that the Bill of Lading referred to in the Libel provides for exclusive jurisdiction of this matter in the German courts. Oral argument on respondent's motions was heard by me in Charleston on June 15, 1966, with counsel for both libellant and respondent being present.

At the hearing, counsel for respondent conceded, and the answers to the interrogatories propounded by libellant clearly show, that under the "minimum contacts" test enunciated by the United States Supreme Court in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and later Supreme Court and lower court decisions, respondent was present and doing business within the State of South Carolina at the time the cause of action arose. Therefore, if valid service has been effected, this court will have jurisdiction over the matter.

Following the hearing on June 15, counsel for the parties were granted leave to submit supplemental briefs concerning the validity of the service of the citation on the local port agent, and on the question of the exclusive jurisdiction of the controversy being in the German courts pursuant to the contractual provisions of the Bills of Lading.

Thereafter, on June 20, 1966 the Libel was served upon respondent by substituted service of process by serving the Secretary of State of South Carolina pursuant to Section 10–424 of the Code of Laws of South Carolina for 1962, as amended, entitled Service on foreign corporations generally, which provides as follows:

If the suit be against a foreign corporation other than a foreign insurance company the summons and any other legal paper may be served by delivering a copy to any officer, agent or employee of the corporation found at the place within this State designated by the stipulation or declaration filed by the corporation pursuant to § 12–721. But if such foreign corporation transacts business in this State without complying with that section such service may be made by leaving a copy of the paper with a fee of one dollar in the hands of the Secretary of State or in his office, and such service shall be deemed sufficient service and shall have like force and effect in all respects as service upon citizens of this State found within its limits if notice of such service and a copy of the paper served are forthwith sent by registered mail by the plaintiff to the defendant foreign corporation and the defendant's return receipt and the plaintiff's affidavit of compliance therewith are filed in the cause and submitted to the court from which such process or other paper issued.

Such service may also be made by delivery of a copy thereof to any such corporation outside the State, and proof of such delivery may be made by the affidavit of the person delivering such copy. Such affidavit shall be filed in the cause and submitted to the court from which the process or other paper issued. Provided service may be made on foreign corporations as is provided for in § 10–421.

The issues now before the court are (1) whether service of process on a local port agent is valid service on a foreign ship owner in an *in personam* action; (2) whether a foreign ship owner is amenable to substituted service pursuant to a state "long-arm" statute; and (3) whether the court should decline jurisdiction in any event on the ground that the parties have contracted through the

Bills of Lading that exclusive jurisdiction of the controversy be vested in the German courts.

After studying the briefs submitted by counsel for the parties, hearing oral arguments, and considering the affidavits of the President of Palmetto Shipping Company and the Vice President of Biehl and Company, Inc., a Louisiana corporation submitted by respondent, I find that Biehl and Company is the General Agent of respondent, operating out of New Orleans, Louisiana, and that Palmetto Shipping Company has an agreement with Biehl and Company to provide local husbanding services on a ship to ship basis for the Stinnes Lines ships calling at the port of Charleston. Palmetto also solicits cargo for the Stinnes ships from time to time and reports such cargo to New Orleans where it is accepted or rejected by Biehl and Company. There is no contractual agreement between Palmetto Shipping Company and the corporate respondent.

It is conceded by the parties that service upon a General Agent of a foreign ship owner is sufficient to vest jurisdiction in the American courts.

Counsel for libellant cites Murphy v. Arrow Steamship Company, 124 F.Supp. 199, 1954 A.M.C. 1423 (E.D.Pa.1954), as authority for the proposition that service upon a local port agent providing ordinary husbanding services on a ship to ship basis is also valid service on a foreign ship owner. However, this opinion cites no authority to support the holding of the court that service on a local port agent is binding on a ship owner, and the language there is contrary to earlier and later pronouncements by the Pennsylvania courts concerning the invalidity of service on a local port agent. See Higgins v. California Tanker Company, 1958 A.M.C. 1654 (E.D.Pa.1958); Wade v. Romano, 1961 A.M.C. 196 (E.D. Pa. 1959), and the cases cited therein.

The affidavits submitted support respondent's contention that Palmetto Shipping Company, the local port agent, is, in fact, a sub-agent for Biehl and Company, the Louisiana corporation. In

George H. McFadden and Bros. v. M/S Sunoak, 167 F.Supp. 132 (D.C.Va.1958), Judge Hoffman held invalid the attempted service upon the husbanding or local port agent in an *in personam* action against the General Agent of the ship owner, stating as follows:

It is, of course, true that service upon a mere husbanding agent is sufficient to bind the owner of the vessel while the ship is in port, and perhaps until the husbanding agent has paid the bills incurred and submitted its account to the General Agent for their account of the owner. This is not to say, however, that service upon a husbanding agent is tantamount to service upon the General Agent. * * *

The present case is substantially similar to Spreckles Sugar Company v. South Atlantic Steamship Line, D.C. S.D.Ga., 55 F.Supp. 670, 672, where service was made upon a husbanding agent in an effort to reach Isthmian Steamship Company, a General Agent for War Shipping Administration. The court said: "The obstacle to be overborne here, however, is that Isthmian had no agent of its own in this district upon whom service could be made. The sub-agent appointed by Isthmian was not the kind of agent that would justify bringing Isthmian into court for service upon him."

▇ I find, therefore, that the service of process on Palmetto Shipping Company, the local port agent, is not binding upon the respondent so as to vest jurisdiction in this court.

Although libellant has failed to cite any instance where the South Carolina "long-arm" statute has been used to effect service on a foreign ship owner, in the State of Maryland, in Gkiafis v. SS Yiosonas, 342 F.2d 546 (4 Cir. 1965), Judge Sobeloff speaking for the court upheld the substituted service of process on a foreign ship owner in an action commenced under the Jones Act, 46 U.S. C.A. Section 688, when the cause of action arose in Maryland, served on the Department of Assessments and Taxation pursuant to a Maryland statute au-

thorizing such service on foreign corporations doing business in Maryland and having no resident agent appointed. The Maryland statute considered in *Gkiafis* is similar to the provisions of Section 10–424 of the South Carolina Code of Laws for 1962, as amended, and provides as follows:

"If * * * any foreign corporation subject to suit in this State under § 92 of this article, (1) has not a resident agent, * * * such corporation shall be conclusively presumed to have designated the Commission as its true and lawful attorney authorized to accept on its behalf service of process * * *." Md. Code Ann. Art. 23, § 96(d) (1957).

In *Gkiafis*, the vessel on which the injury occurred was a Panamanian tramp steamer and had called at the port of Baltimore on only four occasions prior to the commencement of the action, and only one time thereafter; however, the injury giving rise to the cause of action under the Jones Act had occurred while the ship was in port in Baltimore.

This decision of the Fourth Circuit upholding substituted service of process on a foreign ship owner is in accordance with recent decisions concerning the validity of substituted service on foreign corporations doing business within a state while not having an agent appointed for acceptance of service.[1]

Although the court's ruling in reference to respondent's alternate motion makes a determination of this question of substituted service under South Carolina's "long-arm" statute academic, the court has no difficulty in holding that the corporate respondent has sufficient "minimum contacts" with the State, so as to authorize service upon it through the Secretary of State in accordance with Section 10–424, as amended, supra, in this *in personam* action.

As to respondent's alternate motion that the court decline jurisdiction since the provisions of the Bill of Lading specifically provide for exclusive jurisdiction of this cause in the German courts, the following provision appears in the Bills of Lading under which the alleged damaged cargo was shipped:

XVII: *Jurisdiction and Law Clause.* Any claim against the carrier arising under this Bill of Lading shall be decided according to the Hague Rules contained in the International Convention of certain Rules relating to Bills of Lading, dated Bruxelles, the 25th August 1924, as enacted in the German Commercial Code (Handelsgesetzbuch), except as provided elsewhere herein, and in the German Courts in Hamburg, to the jurisdiction of which the Carrier submits himself. In case the law of a country in which a suit is filed does not recognize the above said agreement on the exclusiveness of German Courts and/or the agreement on the exclusiveness of the application of German Law, then the Hague Rules as enacted in this country shall apply, or if no such enactment is in force in this country the terms of said convention shall apply.

Although the United States Supreme Court in Monrosa v. Carbon Black Export, Inc., 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723, 1959 A.M.C. 1327 (1959), has held that such a provision within a Bill of Lading limiting jurisdiction to the courts of a foreign country in an *in rem* action is invalid, it refused to pass upon the question as to whether such a provision within a Bill of Lading is valid in an *in personam* action.

In the leading case, William H. Muller and Company v. Swedish American Line, Ltd., 224 F.2d 806, 1955 A.M.C. 2406 (1955), the Second Circuit Court of Appeals held that such a clause is valid and does not violate the Carriage of Goods by Sea Act (46 U.S.C.A. 1300 et seq.), if it is reasonable. The court says at 224 F.2d 808, 1955 A.M.C. 1689:

From this it follows that in each case the enforceability of such an agree-

---

1. See Shealy v. Challenger Mfg. Co., Inc., 304 F.2d 102 (4 Cir. 1962), and the cases cited therein.

ment depends upon its reasonableness. We agree with the appellant to this extent: the parties by agreement cannot oust a court of jurisdiction otherwise obtaining; notwithstanding the agreement, the court has jurisdiction. But if in the proper exercise of its jurisdiction, by a preliminary ruling the court finds that the agreement is not unreasonable in the setting of the particular case, it may properly decline jurisdiction and relegate a litigant to the forum to which he assented. * * *

The American courts have followed the rule as set forth in the *Muller* decision where it is shown that to decline jurisdiction is reasonable under the facts of a particular case. Texas San Juan Oil Co. v. An-Son Offshore Drilling Co., 1964 A.M.C. 1056, 198 F.Supp. 284 (S.D.N.Y. 1961), (no foreign tribunal involved); Schuster Naval Stores Company v. Ozean/Stinnis Lines, 1962 A.M.C. 999 (D.Ga.1961); Aetna Ins. Co. v. Satrustegui, 1960 A.M.C. 891, 171 F.Supp. 33 (D.P.R.), modified, 1960 A.M.C. 895, 174 F.Supp. 934 (D.P.R., 1959); Nieto v. Steamship Tinnum, 1958 A.M.C. 2555, 170 F.Supp. 295, 297 (S.D.N.Y.1958); see also Cerro de Pasco Copper Co. v. Knut Knutsen, 1951 A.M.C. 630, 187 F. 2d 990 (2nd Cir. 1951).

In two recent cases[2] in the United States District Court for the Southern District of Georgia, Savannah Division, the corporate respondent named herein moved the court to decline jurisdiction upon the same ground urged here, that is, that the Bills of Lading under which alleged damaged cargo was shipped provided for exclusive jurisdiction in the German courts. The Honorable F. M. Scarlett, United States District Judge, concluded that the applicable provisions of the Bills of Lading were reasonable under the facts of each case before him and declined jurisdiction, dismissing the Libels.

Here, as in the cases before Judge Scarlett, the vessel is German owned and operated, and was staffed with an all German crew at the time of the alleged cargo damage; all of the ship's witnesses are residents of Germany; the cargo was loaded in Germany by German stevedores; and the RANTUM is not scheduled to return to Charleston in the near future. Moreover, the libellant certainly knew or should have known of the provisions of the Bills of Lading under which its cargo was shipped and it surely had knowledge of the decisions of the Georgia court mentioned above in which the same provisions were held to be valid and reasonable. Furthermore, the Bills of Lading provide that the controversy will be decided according to the same principles of law whether the controversy be decided in Hamburg or in Charleston and there has been no showing by the libellant that it would be detrimental for the cases to be tried in Hamburg or that the German courts are not capable of adjudicating this case fairly and justly. Neither has there been any showing that the applicable German law is more restrictive than the American law.

The respondent has agreed to waive any German statute of limitations which might apply, in the event the Libel is refiled by the libellant in the German courts within a reasonable period of time.

Based upon the above findings of fact, I conclude that the provision in the Bills of Lading pertaining to the exclusive jurisdiction of the German courts is reasonable and should be enforced. It is, therefore,

Ordered that the alternative motion of the respondent be, and it hereby is, granted and this court declines to accept jurisdiction of the controversy. It is further

Ordered that the Libel be, and it hereby is, dismissed without prejudice to any action in the agreed forum.

Let judgment enter accordingly with each party to pay its own costs.

---

2. See Schuster Naval Stores Co. v. Ozean-Stinnes Lines, 1962 A.M.C. 999; Schuster Naval Stores v. Ozean-Stinnes Lines and the SS Barbara, not reported.