THE SOUTH CAROLINA RAILROAD COMPANY *vs.* NIX administrator.

1. Where bills of exceptions *pendente lite* are certified, filed and entered of record, when the case is brought up after final judgment, error may be assigned thereon upon motion in this court, though no mention be made of them in the main bill of exceptions. They are part of the record, and having been certified once need not be certified again.

2. The South Carolina railroad having been allowed to extend its line into Georgia, with the condition attached that suit might be brought against it in this state on all claims upon it, the right to sue it here was not confined to the citizens of Georgia, but extended to the citizens of other states. Therefore, a foreign administrator, upon complying with the conditions for the bringing of suits by such persons, might sue the corporation in Georgia, although the administration was in South Carolina and the right of action accrued under a statute of that state.

3. Where, in a suit brought in Georgia under a South Carolina statute which allowed the administrator of a decedent who left a parent or wife or children to sue for his homicide, the declaration failed to allege that he left such parent, wife or child, it could be amended.

(*a.*) It could also be amended by setting out the South Carolina statute.

4. When a declaration is amended, the amendment relates back to the date of the filing of the original declaration, and if it be not barred by the statute of limitations the amendment will not be barred.

(*a.*) The practice of the *lex fori* in respect to pleadings, amendments and the general mode of procedure will control, if it differs from the practice in the state where the cause of action arose.

5. If a passenger be ejected from a railroad train for failure to pay his fare, and after the train is in motion he tenders it, the conductor is not bound to stop the train to receive his fare and take him on board; if the tender were made while the train was standing still, the conductor was bound to receive the fare and admit the passenger.

6. Though a passenger on a railroad train may have failed to pay his

fare when demanded, yet if before being ejected he tendered it, it was the duty of the conductor to receive it and not eject the passenger.

7. When suit was brought in Georgia for a homicide which occurred in South Carolina, if the statute of that state did not require a prosecution as a condition precedent to a recovery in the civil case, such prosecution was not necessary in Georgia.

8. If the conductor of a train ejected a passenger so that he was run over and disabled by such train, and another train of the same road passing shortly afterwards extinguished what life was left, a right of action arose whether the actual death was caused by the first or second train.

(*a.*) A declaration alleged that a passenger on a railroad train in South Carolina "was violently ejected and thrown from said cars by the defendant and its agents and servants in the course of their employment, and in being thus forcibly and unjustly ejected from said cars as aforesaid, was thrown thereunder and run over and killed thereby." The evidence showed that the passenger was run over and injured by this train, that about an hour afterwards another train ran over the body; whether life was extinguished by the first or second was not absolutely certain :

*Held*, that such declaration furnished a sufficient basis for a recovery on these facts.

(*b.*) If it were necessary to include any allegation concerning the second train in the declaration, it could be done by amendment.

9. The verdict is supported by the evidence.

Practice in Supreme Court. Railroads. Damages. Laws. Comity. Before Judge POTTLE. Richmond Superior Court. April Term, 1881.

To the October term, 1877, of Richmond superior court Nix, administrator of Brown, brought suit against the South Carolina Railroad for the homicide of his decedent. The action was brought under the statute of South Carolina, which provides that actions for homicides shall be for the benefit of the wife, husband, parent and child of the person killed, shall be brought by or in the name of the legal representative, and the recovery shall be divided among the beneficiaries like personal assets of an intestate. (Rev. Stats. S. C., p. 507.)

The defendant demurred to the declaration because it

did not set out for whose benefit the action was brought, and did not set forth the South Carolina law on which it was based. This demurrer was heard on April 15th, 1880, and sustained, but with leave to the plaintiff to amend. During the April term, 1880, of court the case was called for trial. Plaintiff tendered his declaration amended in accordance with the above stated ruling. Defendant again demurred on the grounds that the original declaration was not sufficient to amend by (no beneficiaries having been set out therein), and that the cause of action set out in the amendment was barred by the statute of limitations (two years being the limit fixed by the statute). The demurrer was overruled.

The evidence for the plaintiff made, in brief, the following case: On the evening of August 11th, 1877, Brown, a colored man, took the train which left Augusta on defendant's road about 7 o'clock, P. M. When about two and a half miles from that place, the whistle was blown, the train stopped, and the conductor put Brown off. While they were going to the door, Brown pulled out two pieces of silver and said to the conductor, " Boss, don't put me off. I've got money to pay my way." The conductor said, " Why didn't you give it to me when I called for it?" Brown answered, " I was asleep." The conductor said, " You ought to keep awake and attend to your damned business. Now I have stopped the train, you have got to get off," and required him to do so. While standing on the ground Brown again asked to be allowed to pay his fare and tendered money, which the conductor refused and pulled the bell-rope. Brown had hold of the railing of the car, and swung round as the car started. As he did so, one passenger remarked to another, " There goes a dead nigger." In putting him off, both the conductor and train-hand pushed him. Next morning the body of Brown was found on the track, the trunk being severed and showing signs of having been dragged along the track a short distance and badly muti-

lated.   He appeared to be tight at the time when he was
put off.   There was also testimony as to the value of his
services, his habits, etc., not material here.

The evidence for the defendant was, in brief, as follows:
The conductor asked Brown for his fare, but the latter
said he had no money except a nickel, which he offered,
and the conductor refused.   The conductor told him he
would have to stop the train and put him off.   Brown
said he had no money; the train was stopped and he was
told to get off, which he did, stepping clear of the edge
of the car.   After the signal for starting had been given,
and the train was about moving (the cars near the engine
having actually begun to move), Brown asked to be allowed
to get on board, and said he had money, but did not show
any.   The train moved on.   One witness (who was in jail
under indictment for breach of trust at the time of testi-
fying) stated that he was a passenger and saw the rear
car pass Brown.   A freight train left Augusta about an
hour after the passenger train.   The engineer kept a good
lookout for obstacles on the track, but saw nothing, and
there was no sign on the engine of having passed over a
body.   Another train passed the place about seven
o'clock next morning, and the engineer discovered the
body.   No violence was used in putting Brown off.   He
got off on the left hand side of the track; when found
the body lay across the right hand rail and was severed
in two.

There was some other evidence as to the habits of
Brown, etc., not material here.

The jury found for the plaintiff $1,500.00.   Defendant
moved in arrest of judgment, and also moved for a new
trial on the following grounds:

(1.) Because the court erred in not dismissing the case.

(2.) Because verdict is contrary to the law and the evi-
dence in the case.

(3), (4), (5.) Substantially as the second ground.

(6.) Because the court charged the jury as follows: " If

the conductor put him off the train for his refusal or failure to pay his fare, and while off the train and on the ground, while the train was in motion, Brown then became willing and ready to pay his fare, and did tender it, the conductor, who must be presumed to be familiar with his schedule and those of other trains and the necessities of the service, was under no legal obligation to stop his train and take him on, and if the injury occurred under this state of facts, the defendant is not liable," the error of the charge consisting in this, that it left the jury to infer that if under the other circumstances, as stated, and the train was not in motion at the time, then the conductor would have been bound to have accepted the fare, and if he refused the defendant would be liable.

(7.) Because the court charged the jury, " If the conductor demanded his fare, and Brown failed or refused to pay it at first, and while he was taking him from his seat for the purpose of ejecting him, Brown, then on the train, tendered him the full amount of his fare, and it was refused by the conductor for the reason of his first refusal, an ejection then was unlawful, and the defendant is responsible for the consequences of that act of the conductor; this is true, especially if you believe from the evidence that Brown's failure to pay his fare when first demanded was due to his mental condition.

(8.) Because the court charged the jury : " If you believe that Brown was killed by the second train, and the first train was in no wise connected with the injury, then the plaintiff is not entitled to recover in this action ; but if you believe that Brown was injured by the wrongful act of the conductor of the first train, the defendant is responsible though he was actually killed by the second train.

(9.) Because the court refused to charge the jury as follows, when requested in writing by defendant : " A passenger who fails to exhibit his ticket or to pay his fare on a reasonable demand therefor, forfeits his right to be car-

ried further, and may be ejected at once, and after the signal has been given to stop the train for the purpose of removing him from it, cannot regain his right to be carried by his exhibiting it, or offering to pay, and a conductor is justified in persisting, notwithstanding its exhibition or such offer, in ejecting him."

(10.) Because the court refused to charge the jury as follows: "If the jury believe the killing was under circumstances which showed a wilful and malicious disregard of human life, then there can be no recovery in a civil suit for damages unless a criminal prosecution has been instituted, or plaintiff has satisfactorily explained why such prosecution was never instituted.

(11.) Because the court refused to charge as follows: "If the jury believe that Brown was not killed by the train from which he was ejected, but by another train passing along defendant's road, an hour or more later, such killing would be too remote a consequence of the eviction, and too different a transaction from that set forth in the declaration, and too much dependent upon other circumstances for the plaintiff to recover in this action."

(12.) Because the court refused to charge as follows: "This action is brought for damages for the killing of Anderson Brown by the train on which he had been traveling; the proof must correspond with the allegation. Evidence that Brown was killed by defendant in a different way and at a different time will not sustain this action, although the defendant might be liable for such killing in another action. If, therefore, the jury believe that Brown was killed by another train of defendant than that from which he was evicted, the plaintiff cannot recover in this action."

The motion was overruled, and defendant excepted.

When the demurrer to the declaration was overruled, exceptions *pendente lite* were certified and placed on record. No mention was made of them in the final bill of exceptions. When the case was called in the supreme

court, counsel for plaintiff in error moved to be allowed to assign error on such exceptions. The motion was allowed, as set out in the first division of the decision.

BARNES & CUMMING, for plaintiff in error.

FOSTER & LAMAR, for defendant.

JACKSON, Chief Justice.

1. In this case, the record showed that bills of exceptions *pendente lite* had been taken and allowed in the superior court during the progress of the case, but no mention was made of them in the bill of exceptions finally certified, and which brought the cause before this court by writ of error, and no assignments of error are made thereon in that final bill of exceptions.

Thereupon the plaintiff in error moved to assign error on these interlocutory bills of exception, which appeared legally certified and allowed in the transcript of the record.

The motion must be granted under section 4250 of the Code, and the practice of the court in regard thereto and in construction thereof.

The only object of a bill of exceptions is that the judge may certify that which transpires before him, and which is not otherwise of record. When that is once done it need not be repeated; and, therefore, where he has allowed and made record of an interlocutory bill of exceptions by certifying it once, he need not repeat the certificate in another and the final bill of exceptions, and such is the express language and sense of the statute. It enacts: "But at any stage of the cause, either party may file his exceptions to any decision, sentence, or decree of the superior court, and if the same is certified and allowed, it shall be entered of record in the cause, and should the case, at its final termination, be carried by writ of error to the supreme court by either party, error may be assigned

upon such bills of exception," etc. What bills of exception ? Of course, those thus certified and entered of record.

If either party takes the case up by writ of error, error may be assigned on these bills of exception by the party which so excepted.

So that, although one party sued out the writ of error by the final bill of exceptions, the other may assign error on these exceptions thus found in the record. This is a right he could not exercise in the bill of exceptions of his adversary without his consent, and hence he can only assert it independently by assigning error on his own bills of exceptions certified before by the judge, and found in the record.

Nor is there any trouble in regard to want of notice to the other side. The record of what transpires in court in a case is always notice to parties. When these interlocutory bills of exceptions are certified and allowed and made record, the other party has notice, and must prepare to meet the assignments of error thereon, which his adversary has the legal right to make on the calling of the case in this court.

2. The plaintiff is the administrator of a decedent who was killed by the defendant in the state of South Carolina, on the South Carolina railroad, about three miles from Augusta. Letters of administration were issued to the plaintiff in that state, who complied with the law as contained in section 2615 of the Code of this state, and was thereby entitled to sue, by virtue of sections 2614 and 2615 of the Code, in the courts of this state. The defendant, the South Carolina Railroad Company, by an act of the general assembly of this state, was empowered to cross the Savannah river and run their road into Georgia at Augusta, on condition, or with the provision, that suit might be brought against it in this state on " all claims " upon it.

This is a claim upon it by virtue of a statute of South

Carolina, which authorizes the administrator of a decedent to sue the road for the homicide of the husband and father for the benefit of the widow and children, and this administrator, though appointed in another state, having complied with our terms enacted in the sections of the Code above cited, has the right to sue in this state. The defendant is an artificial person created in South Carolina; yet Georgia permitted this creature of South Carolina to put foot on her soil, and the corporation thereupon accepted the privilege or franchise to do so and agreed thereby to be sued here. Richmond county is the *locus*—the *venue*—which the stranger occupies in Georgia, and where, by the agreement, this stranger may be sued. By the spirit of decisions of this court (43 *Ga.*, 461; 49 *Ib.*, 106; 52 *Ib.*, 565; 59 *Ib.*, 426; 61 *Ib.*, 132), and that of the supreme court of the United States, in 103 U. S. R., p. 11, which latter case fully covers this point, the claim to sue, or cause of action growing alone out of the South Carolina statute, may be brought and enforced in this state, under the facts above narrated. Whilst, doubtless, the right to sue this company in this state was acquired by Georgia when permission was given this railway company to enter Georgia, for the benefit of her own people, as is said in 64 *Ga.*, pp. 18–30, nevertheless, when she acquired this right to sue for her own citizens, the constitution of the United States gave it to the citizens of all the other states of the Union. Constitution of the United States; Code of Georgia, §5209. A citizen of South Carolina might, therefore, have sued here, and an administrator in that state, on complying with our law in respect to suits brought by foreign administrators, has the same right and may sue.

3. By the assignments of error on the interlocutory bills of exceptions it is insisted that the declaration is bad, because by the South Carolina statute, as construed by the courts of that state, 15 Rich., 201, it should appear that decedent left a parent, or wife, or children, and no aver-

ment to that effect is made. The court so ruled in this case, but allowed the plaintiff to amend by the allegation that the decedent left a wife. By the decision in 15th Richardson, the amendment was allowable and was properly granted. And we think also that it was properly granted in respect to setting out in the declaration the South Carolina statute.

4. When amended, the amendment relates back to the original declaration, and the date of its filing is the date from which the statute of limitations will be counted. Such is the ruling of this court in 63d *Ga.*, 243, *Rutherford, executor, vs. Hobbs*, and such we presume is the law of South Carolina. The practice of the *lex fori*, in respect to pleadings, amendments and the general mode of procedure would prevail, however, even if the rule were different in the courts of the state where the injury occurred. 49 *Ga.*, 106. But it seems that the courts of South Carolina rule that there is enough to amend by in such an original declaration as this was, and would not allow the defect to be taken advantage of in arrest of judgment, which is the test. 15 Rich., 201 *supra*.

We see no error, therefore, in the assignments of error made here on the interlocutory bills of exceptions, which are that there was nothing to amend by, and that the statutory bar should have been applied, because over two years had elapsed from the date of the homicide to the date of filing the amendment.

The action, therefore, in our view of the law, was in court on a good, substantially good, declaration, having been amended in substance as allowed since the act of 1853–4, Code, §3479, by the laws of this state, and also by the law of South Carolina.

5. We come, then, to errors assigned on the charges and refusals to charge on the merits of the case.

On the 6th ground it is alleged substantially that the court erred in charging, that if the train was in motion the conductor was not bound to stop it and receive fare

from the passenger ejected for not having paid it when demanded, but inferentially that he ought to do so if the train was not in motion when the tender was made. We think that the charge accords with good sense, and is good law.

6. *A fortiori* we think the charge that if it was tendered before ejection but after the first failure to pay on demand, then the conductor should have received it and not ejected the passenger, must be good law, and therefore the seventh ground was properly overruled. The refusal to charge as requested in the ninth ground is covered by the above ruling and must abide the same fate.

7. The South Carolina statute does not require a prosecution for the homicide if felonious, and the Georgia jurisdiction does not extend over South Carolina in prosecutions for crime; therefore there was no error in overruling the tenth ground, even if the crime had been committed while Georgia statute or laws required such criminal prosecution before a civil action for damages would lie.

8. The refusals to charge as requested in the eleventh and twelfth grounds of the motion, which are to the effect that the killing must be shown to have been done by the particular train from the cars of which the passenger was ejected, and that damages for the killing by another train subsequently passing over the body could not be recovered under this declaration, must be considered in connection with the allegation in the declaration and the charge given by the presiding judge and excepted to in the eighth ground. The declaration avers that the plaintiff " was violently and forcibly ejected and thrown from said cars by the defendant, and by its agents and servants in the course of their employment, and in being thus forcibly and unjustly ejected from said cars, as aforesaid, was thrown thereunder and run over and killed thereby."

The charge given by the court is, "that if you believe that Brown was killed by the second train and that the

first train was in no wise connected with the injury, then the plaintiff is not entitled to recover in this action, but if you believe that Brown was injured by the wrongful act of the conductor of the first train, the defendant is re_ sponsible though he was actually killed by the second train."

The allegation is that ·'he was thrown thereunder and run over and killed thereby." The charge is to the effect that if he was thrown thereunder and thereby injured by the wrongful act of the conductor, and run over even by the second train and killed, having been first injured by the act of the conductor of the train whence he was thrown, then the company would be liable. Is this charge error? We do not think so. It might have been plainer, but it is clear that if this passenger was thrown under the first train and injured thereby so that the next train ran over and killed him in consequence of that injury, the allegation in the declaration would support a recovery therefor; because the act of killing would necessarily have been the joint act of the two trains, the first dis- abling him by the injury inflicted in throwing him under it, and the second train consummating the wrong by the actual killing or extinction of all the life left in him.

Suppose the second train, instead of passing over the road in one hour, had passed in five minutes, and he had been thrown under the first and been disabled, and then the second had rushed over him and extinguished life, would not the allegation have supported the charge? If so, why not if he lay there disabled for an hour, and was then run over by the second train and life then extin- guished?

Suppose there had been a prosecution for murder, who would be found guilty thereof, the conductor of the train who did the deed of throwing him off and under, or the conductor of the other train who ran unconsciously over him? Clearly he who did the intentionally wrongful act, and whose act caused his death.·

Mark it, the allegation is not specifically that the train from which he was ejected ran over him, but that he was run over after being thrown thereunder, without alleging by what train, and killed thereby, that is by being run over.   It is enough if he was run over by any train, and that train ran over him and killed him because of injuries received by being thrown out of and under the first train.

Besides, we do not think that a reversal on this charge and these refusals can alter the final result.   The declaration could be amended so as to embrace the second train, if need be, and the evidence is almost overwhelming, if not quite so, that the whole injury, killing and all, was done by the first train.   The other may have struck the dead body and dragged it afterwards.   In law the killing by either train would give a right of action.   60 *Ga.*, 441.

9. The verdict is abundantly sustained by law and evidence.

In our judgment it ought to stand.   Whilst conductors must necessarily have control of cars and passengers, and be invested with much power in regard to the collection of fare and the orderly conduct of passengers, and may eject the passenger if he does not pay, or put him off if unruly, yet it must be done with great regard to the safety and preservation of limb, and much more of life, of that passenger over whom the power is exerted.

Judgment affirmed.

Cited for plaintiff in error:   Rosen on Inter. Stat. Law, p. 155 *et seq.* ;   167 *et seq.* ;   64 *Ga.*, 25, 30 ;   65 *Ib.*, 496 ;   55 *Ib.*, 194 ;   15 Rich., 201 ;   43 *Ga.*, 461 ;   49 *Ib.*, 106 ;   15 Gray, 20 ;   29 Am., 458, 471 ;   30 *Ib.*, 611, 606 ;   52 *Ga.*, 466, 467 ;   Redfield's R. R. Cases, vol. 11, p. 440 ;   1 Redfield on Railways, p. 95 ;   7 Metcalf, 596 ;   Central Law Jour., July 16, 1880, p. 47 ;   47 Iowa, 82 ;   32 Ohio, St., 345, 38 *Ga.*, 409 ;   61 *Ib.*, 151.

For defendant : Code, §4250; 56 *Ga.*, 230 ; 59 *Ib.*, 146; 9 Rich., 84 ; 4 *Ib.*, 61 ; 10 *Ib.*, 227 ; 103 U. S., 11 ; 59 *Ga.*, 426; 52 *Ib.*, 465 ; 61 *Ib.*, 132 ; 49 *Ib.*, 106; 43 *Ib.*, 461; L. & N. R. R. *vs.* Garrett, Sup. Court Tenn., 1881 ; 55 Cal., 570 ; 36 Am., 50 ; 60 *Ga.*, 441 ; 59 *Ib.*, 593 ; 64 *Ib.*, 306; 29 Am., 681 ; 9 *Ib.*, 437 ; 5 Cal., 460; 38 Conn., 557 ; 30 Am., 602 ; 35 *Ib.*, 279 ; 34 *Ib.*, 277 ; 60 *Ga.*, 441.