SOUTHERN RAILWAY COMPANY *v.* PARKER.

No. 14059. MAY 28, 1942. REHEARING DENIED JUNE 20, 1942.

96

98

*Neely, Marshall & Greene* and *W. Neal Baird,* for plaintiff in error.

*Hewlett & Dennis* and *T. F. Bowden,* contra.

BELL, Justice. Certiorari was granted because of confusion as to an important question of jurisdiction, resulting primarily from previous decisions by this court, which under the constitution are binding upon the Court of Appeals as precedents. Code, § 2-3009.

Considering the case first without reference to the Federal employers' liability act, we see it as one based upon an ordinary transitory cause of action, involving the same principles that were enunciated by this court in *Reeves* v. *Southern Railway Co.,* 121 *Ga.* 561 (supra); and the first question for determination is as to the force that should be given to that decision. The action there was against this same railroad company, a Virginia corporation. The residence of the plaintiff did not appear. The defendant was at that time, as now, engaged in business in Georgia, and was properly served. The action was based on injury to personal property occurring in Alabama during transportation by the defendant railway company under a contract of shipment from Harrison, Missouri, to Atlanta, Georgia. The suit was dismissed on demurrer for want of jurisdiction, and the plaintiff excepted. The ruling of this court, as expressed in the headnote, was as follows: "A for-

eign corporation doing business in this State and having agents located therein for this purpose may be sued and served in the same manner as domestic corporations, upon any transitory cause of action whether originating in this State or otherwise; and it is immaterial whether the plaintiff be a non-resident or a resident of this State, provided the enforcement of the cause of action would not be contrary to the laws and policy of this State." In the opinion it was said:

"The fact that a corporation has no existence except in legal contemplation gave rise to the conception that its existence could not be legally recognized outside of the territorial jurisdiction of the lawmaking power which created it, and that therefore it was impossible for a corporation to migrate beyond the bounds of its creator. This conception resulted in the courts holding that the corporation could not be sued in a jurisdiction foreign to that which gave it existence. While under this view as a matter of theory the corporation did not migrate, yet as a matter of fact its officers and agents did; and contracts were made in its name, and wrongs committed by its officers and agents, in territory far remote from that in which it was supposed to have its only legal existence. Great hardship and inconvenience resulted oftentimes from the application of this rule, which had the effect of compelling those who sought redress for breaches of contract and other legal wrongs against the corporation to bring their actions in the courts of the jurisdiction creating the corporation; the expenses of the remedy in many cases amounting to more than what would have been the fruits of recovery. The recognition of the hardship resulting from this rule brought about a modification of the rule, to the extent that where a foreign corporation located an agent and actually transacted business in a foreign jurisdiction, it so far acquired a residence in that jurisdiction as to make it amenable to the processes of the courts thereof on all causes of action originating within that jurisdiction. The rule was then further modified to the extent that where the corporation had an agent and was doing business in a foreign jurisdiction, it might be sued upon any transitory cause of action by a citizen of the State in which the corporation was thus doing business. And in this country it followed from this rule that if a resident was allowed to bring this suit, any citizen of the United States would, under the constitution of the

United States, have a similar right to bring suit. *South Carolina Railroad Co.* v. *Nix,* 68 *Ga.* 572 (2), 580; Barrell *v.* Benjamin, 15 Mass. 354; Cole *v.* Cunningham, 133 U. S. 107, 113-114 [10 Sup. Ct. 269, 33 L. ed. 538]. There are many years and manifold changes in economic conditions between the old rule, which denied the right to sue a foreign corporation in personam outside of the jurisdiction of its creation, and the modern doctrine, that the question of jurisdiction and suability is not so much one of citizenship as one of finding. See *Williams* v. *Ry. Co.,* 90 *Ga.* 522 [16 S. E. 303]; *Dearing* v. *Bank,* 5 *Ga.* 497 [48 Am. D. 300]. The development of the principle was by gradual steps, and necessarily involved the overturning of many old cases. The case of *Bawknight* v. *Insurance Company,* 55 *Ga.* 194, was decided during the transition period and before the modern doctrine had been firmly established. It denied the right to sue a foreign corporation on a foreign cause of action. This decision seems to have been followed in Central Railroad Co. *v.* Carr, 76 Ala. 388, 52 Am. Rep. 339. In the *Bawknight* case it is to be noted that the original record shows that the plaintiff was a resident of the State of Florida, and at that time the fact of the non-residence of the plaintiff was by several courts considered important, some holding that on a cause of action arising in another State a non-resident plaintiff could not sue a non-resident corporation, while others held that it was within the discretion of the court to allow or refuse such right to a non-resident. The true test of jurisdiction is not residence or non-residence of the plaintiff, or the place where the cause of action originated, but whether the defendant can be found and served in the jurisdiction where the cause of action is asserted. A corporation can be found in any jurisdiction where it transacts business through agents located in that jurisdiction; and suits may be maintained against it in that jurisdiction, if the laws of the same provide a method for perfecting service on it by serving its agents. From 1845 to the present time the law of Georgia has provided that service of process necessary to the commencement of *'any suit against any corporation in any court,'* with certain exceptions which are not material to this discussion, may be perfected by serving any officer or agent of such corporation, or by leaving a copy of the process at the place of transacting the usual and ordinary business of such corporation, if such place shall then be within the jurisdic-

tion of the State in which the suit is commenced. Civil Code, § 1899 [Code of 1933, § 22-1101]. The language of this section is sufficiently broad to authorize the service of process in a suit against a foreign corporation that has a place of doing business in this State."

The foregoing is only an excerpt, but further quotation will not be indulged. The decision was concurred in by all the Justices, and therefore as to such question *as it determined* it is binding as authority until it is reviewed and overruled or is superseded by a decision of the United States Supreme Court, as to some Federal question.

*In Louisiana State Rice Milling Co.* v. *Mente*, 173 *Ga.* 1 (supra), it was held: "Where one non-resident corporation brings suit in this State against another non-resident corporation, both plaintiff and defendant being domiciled in the same State, although the petition alleges that defendant foreign corporation 'has an office, agent, and place of business and is doing business in Chatham County, Georgia,' but where the cause of action does not arise out of any of the business transacted in this State, and where the cause of action bears no relation to the business transacted in this State, the courts of this State have no jurisdiction. Applying the foregoing principles to the facts of this case, the court did not err in sustaining the general demurrer and dismissing the petition." In the opinion it was stated in effect that the decision in the *Reeves* case should be restricted to its actual facts; and that since the case was actually one in which the business done by the railroad company in Georgia bore a direct relation to the injury, the decision therein did not control the *Louisiana Rice Milling Company* case.

It may be said in this connection that on practically every proposition that it is necessary to consider in a case of this kind, the authorities are in direct conflict, with numerous decisions on each side; and this was true even at the time of the decision in the *Reeves* case. See 20 C. J. S. 174, § 1922; 23 Am. Jur. p. 501, § 496; Lipe v. Carolina &c. Railway Co., 123 S. C. 515 (116 S. E. 101, 30 A. L. R. 248); Gregonis v. Philadelphia & Reading Coal &c. Co., 235 N. Y. 152 (139 N. E. 223, 32 A. L. R. 1); Steele v. Western Union Telegraph Co., 206 N. C. 220 (173 S. E. 583, 96 A. L. R. 361); State ex rel. Taylor Laundry Co. v. District Court, 102 Mont. 274 (57 Pac. 2d, 772, 113 A. L. R. 1, and especially

the annotations). The decision in the *Reeves* case accorded with the weight of authority at the time of its rendition, and still accords therewith. It expressly overruled *Bawknight* v. *Liverpool & London & Globe Insurance Co., 55 Ga.* 194, supra, as being in conflict with modern authority and with the policy of this State as indicated by legislation in existence at the time that case was decided; and, as shown in the quotation above, it also disapproved Central Railroad Co. *v.* Carr, 76 Ala. 388 (52 Am. R. 339), another exponent of the minority view, until the Alabama law was changed by legislative enactment. Jefferson Island Salt Co. *v.* Longyear Co., 210 Ala. 352 (98 So. 119); McKnett *v.* St. Louis & San Francisco Railway Co., 292 U. S. 234 (54 Sup. Ct. 690, 78 L. ed. 1227). There were still other features illustrating the scope and intent of the decision in the *Reeves* case.

Accordingly, while it may be true that the cause of action there did bear a direct relation to business done by the railroad company in Georgia, the decision as a whole shows that this circumstance was treated as immaterial, and that the conclusion reached would have been the same in the absence of such relationship. The opinion dealt mainly with important questions of law about which the authorities were in conflict, and deliberately pronounced what was conceived to be the Georgia law and policy regarding them.

Despite all of this, however, we do not deem it necessary to determine whether the *Reeves* decision is absolutely binding as a precedent. Be that as it may, we have in the present case carefully re-examined the questions considered in that case; and having done so, we are convinced that it correctly states the Georgia law as applied to the present situation. It also accords with what has apparently been the consistent judicial usage in Georgia from the early history of this court to the present time, except for the short period between the *Bawknight* and *Nix* cases, supra, and the period following the *Louisiana Rice Milling Company* case; the interruptions amounting in all to only about sixteen years. The decision in the *Rice Milling Company* case was not concurred in generally or unqualifiedly by all the Justices, the Chief Justice having concurred specially; so that decision is not binding as a precedent upon this court. 21 C. J. S. 305, § 189; 14 Am. Jur. 294, § 81. Nor is there a decision of the United States Supreme Court that would require a similar ruling in the instant case. Ac-

cordingly, whether in view of its facts the *Reeves* case is absolutely binding as a precedent, we are free to follow it in the present case, and we do follow it in so far as it is applicable. To the same effect see *South Carolina Railroad Co.* v. *Nix,* 68 *Ga.* 572 (2), also a unanimous decision. This means, of course, that for present purposes we lay aside the *Rice Milling Company* case, although the conclusion reached therein may have been correct under its peculiar facts, especially as the plaintiff there was a foreign corporation and thus may not have been entitled to invoke the "privileges and immunities" clause applicable to *citizens.* As to the right of a corporation to invoke that clause (Code, § 1-402), see Paul *v.* Virginia, 75 U. S. 168 (19 L. ed. 357); Ducat *v.* Chicago, 77 U. S. 410 (19 L. ed. 972); Waters, Pierce Co. *v.* Texas, 177 U. S. 45 (20 Sup. Ct. 518, 44 L. ed. 657); Western Turf Association *v.* Greenberg, 204 U. S. 359 (27 Sup. Ct. 384, 51 L. ed. 520).

The Court of Appeals in dealing with the present case evidently regarded the *Rice Milling Company* case as a binding precedent (cf. *Erlanger Cotton Mills* v. *O'Neill Brothers Inc.,* 46 *Ga. App.* 329, 167 S. E. 715; *McCorkle* v. *Pullman Co.,* 60 *Ga. App.* 879, 5 S. E. 382), but concluded that the instant case was not brought within its scope, because of the defendant's failure to show that the operation of the engine at the time in question was not connected with the business of the defendant in Georgia. While we can not see that the plaintiff's injury was connected with Georgia business, we are of the opinion that such connection was not essential to jurisdiction. The trial judge found that the plaintiff was a "legal resident" of South Carolina and the Court of Appeals proceeded on the theory that he was a "non-resident" of this State. As we view the case, it is immaterial whether the quoted terms were intended to refer to residence only, as distinguished from citizenship, in contemplation of the "privileges and immunities" clause. For classifications based on such distinction, see Robinson *v.* Oceanic Steam Navigation Co., 112 N. Y. 315 (19 N. E. 625, 2 L. R. A. 636); Loftus *v.* Pennsylvania Railroad Co., 107 Ohio, 352 (140 N. E. 94); Chambers *v.* Baltimore & Ohio Railroad Co., 207 U. S. 142 (28 Sup. Ct. 34, 52 L. ed. 143); Douglas *v.* New York, New Haven & Hartford Railroad Co., 279 U. S. 377 (49 Sup. Ct. 355, 73 L. ed. 747). The distinction would not be important under the *Reeves* case, where the plaintiff was not an alien, especially

as the plea of the defendant presented no question as to comity, but was grounded solely upon an alleged want of jurisdiction. As to comity, see Code, § 79-305; *Southern Railway Co.* v. *Decker,* 5 *Ga. App.* 21 (62 S. E. 678); *Tennessee Coal, Iron & Railroad Co.* v. *George,* 11 *Ga. App.* 221 (75 S. E. 567); *Chambers* v. *Baltimore & Ohio Railroad Co.,* supra. If the plea to the jurisdiction might be construed as including the contention that the defendant as a foreign corporation is *present* in Georgia for the purpose of suit only as to business done in Georgia or as to transactions connected therewith, such contention would also fail under the decision in the *Reeves* case.

It was further alleged, in effect, that assumption of jurisdiction by Georgia would violate the fourteenth amendment by depriving the defendant of its property without due process of law. This was a mere conclusion of the pleader, resting only upon the allegations as to non-residence of the parties and occurrence of the injury in South Carolina. There was no allegation or proof touching greater expense or inconvenience of trial in Georgia, and in the absence of such the defendant could not invoke the fourteenth amendment, so far as mere burden is concerned. Cf. *Forrester* v. *Edwards,* 192 *Ga.* 529 (2) (15 S. E. 2d, 851); *Washington Seminary Inc.* v. *Bass,* 192 *Ga.* 808 (16 S. E. 2d, 565); Davis *v.* Farmers Co-Operative Equity Co., 262 U. S. 312 (43 Sup. Ct. 556, 67 L. ed. 996); Atchison, Topeka & Sante Fe Railway Co. *v.* Wells, 265 U. S. 101 (44 Sup. Ct. 469, 68 L. ed. 928); Michigan Central Railroad Co. *v.* Mix, 278 U. S. 492 (49 Sup. Ct. 207, 73 L. ed. 470); Denver & Rio Grande Western Railroad Co. *v.* Terte, 284 U. S. 284 (52 Sup. Ct. 152, 76 L. ed. 295); International Milling Co. *v.* Columbia Transportation Co., 292 U. S. 511 (54 Sup. Ct. 797, 78 L. ed. 1396).

This is not to imply that any facts as to expense or inconvenience could have deprived the court of *jurisdiction,* or even that such facts might have been urged in equity to restrain exercise of it, the defendant being engaged in business in Georgia and therefore *ordinarily* subject to suit in this State. Under the facts of the record these questions are not presented. The question of having jurisdiction and of exercising it are two different things. Nothing here said is intended to rule on the power of a court to refuse to exercise its jurisdiction, where it is duly shown in a proper pro-

ceeding that it would be inequitable to do so. Cf. *McDaniel* v. *Alford*, 148 *Ga.* 609 (97 S. E. 673); Cole *v.* Cunningham, 133 U. S. 107 (10 Sup. Ct. 369, 33 L. ed. 538); Canada Malting Co. *v.* Paterson Steamships Ltd., 285 U. S. 413 (52 Sup. Ct. 413, 76 L. ed. 837); Rogers *v.* Guaranty Trust Co., 288 U. S. 123 (53 Sup. Ct. 295, 77 L. ed. 652, 89 A. L. R. 720).

Having considered the case thus far without reference to the Federal employers' liability act, we will now inquire as to the effect of that statute. As to Federal courts, it provided that suit might be brought in the district of the defendant's residence, or in which the cause of action arose, or in which the defendant shall be doing business at the time of the commencement of such action; and jurisdiction of the Federal courts was made concurrent with that of the State courts. U. S. C. A. title 45, § 56. There is no attack upon any of these provisions. For cases dealing with constitutional questions arising thereunder and upholding the statute, see Chesapeake & Ohio Railway Co. *v.* Vigor, 90 Fed. 2d, 7; Hoch *v.* Byram, 180 Minn. 298 (230 N. W. 823); Boright *v.* Chicago &c. R. Co., 180 Minn. 52 (230 N. W. 457).

It seems that under decisions of the United States Supreme Court, suit against a railroad company in a State other than that in which the cause of action accrued might constitute an undue burden on interstate commerce, and thereby deprive the court of jurisdiction, if the defendant did no interstate business in the State where it was sued, but that the rule would be otherwise where, as here, the defendant was engaged in such business within the jurisdiction in which the action was brought. Davis *v.* Farmers Co-Operative Equity Co., 262 U. S. 312 (supra); Hoffman *v.* State ex rel. Foraker, 274 U. S. 21 (47 Sup. Ct. 485, 71 L. ed. 905); Michigan Central Railroad Co. *v.* Mix, 278 U. S. 492 (supra); Denver & Rio Grande Western Railroad Co. *v.* Terte, 284 U. S. 284 (supra).

On the facts of the record there was no lack of jurisdiction because the case arose under the Federal employers' liability act. See further, Douglas *v.* New York, New Haven & Hartford Railroad Co., 279 U. S. 377 (49 Sup. Ct. 355, 73 L. ed. 747); Murnan *v.* Wabash Railway Co., 246 N. Y. 244 (158 N. E. 508, 54 A. L. R. 1522); and especially Baltimore & Ohio Railroad Co. *v.* Kepner, 314 U. S. 44 (62 Sup. Ct. 6, 86 L. ed. 37); Miles *v.* Illi-

nois Central Railroad Co., 314 U. S. (62 Sup. Ct. 827, 86 L. ed. 766), including the dissenting opinions in these two cases as well as the concurring opinion in the Miles case.

From what has been said, the *judgment* of the Court of Appeals should stand affirmed, but its opinion should be modified to conform with the foregoing views; and it is so directed.

*Judgment affirmed, with direction. All the Justices concur.*