John Edward RIORDAN, Individually, and as Administrator of the Estate of Charlotte Gilchrist Riordan, Deceased, Plaintiff,

v.

W. J. BREMER, INC., Marion Mike, the Home Insurance Company, the Home Indemnity Company, et al., Defendants and Third-Party Plaintiffs,

v.

HAMMET COMPANY, INC., Third Party Defendant.

Joann Renee RIORDAN, a minor, by her next friend and guardian, John Edward Riordan, Plaintiff,

v.

W. J. BREMER, INC., Marion Mike, the Home Insurance Company, the Home Indemnity Company, et al., Defendants and Third-Party Plaintiffs,

v.

HAMMET COMPANY, INC., Third Party Defendant.

Ann E. GUSMANO, Plaintiff,

v.

W. J. BREMER, INC., Marion Mike, the Home Insurance Company, the Home Indemnity Company, et al., Defendants and Third-Party Plaintiffs,

v.

HAMMET COMPANY, INC., Third Party Defendant.

Civ. A. Nos. 478–88 to 478–90.

United States District Court,
S. D. Georgia,
Savannah Division.

March 7, 1979.

Joseph B. Bergen, Savannah, Ga., for plaintiff.

A. Martin Kent, Falligant, Kent & Toporek, Savannah, Ga., for defendant, W. J. Bremer, Inc.

Stanley M. Karsman, Karsman, Brooks & Doremus, Savannah, Ga., for third-party defendant, Hammet Co., Inc.

LAWRENCE, District Judge.

I.

These three diversity actions were filed in this Court by residents of New York in May, 1978, arising from an automobile collision which occurred in South Carolina in June, 1976.[1] The defendants are W. J. Bremer, Inc., a Georgia corporation, and Marion Mike who was driving its tractor-trailer at the time of the collision which occurred on June 3, 1976.[2]

---

1. The plaintiffs in the three cases are:

(a) John Edward Riordan, as administrator of his wife, Mrs. Riordan, who was killed in the collision, and also in his individual capacity.

(b) Joann Renee Riordan, a minor, who is the daughter of John E. Riordan, claiming disabling and disfiguring injuries, brings suit through her guardian and next friend.

(c) Ann E. Gusmano was a guest passenger in the Riordan vehicle and sustained what she alleges to be permanently disabling and disfiguring injuries.

2. In addition to W. J. Bremer Company, Inc. and its driver, plaintiffs have joined in the actions Home Insurance Company and Home Indemnity Company. Apparently they are the liability insurers of the tractor-trailer. Their dubious presence in this litigation as parties defendant is not before this Court for decision at the present time.

Defendants impleaded Hammet Company, Inc., a Florida corporation, as a third-party defendant. Hammet moves to dismiss such action for lack of personal jurisdiction over it in Georgia. The jurisdictional issue is the same in each law suit and represents the only legal question now before this Court. For the sake of convenience, the three cases are treated together.

The complaint alleges negligence by Bremer and its driver in the operation of its tractor-trailer in losing control thereof immediately south of Hardeeville, South Carolina at the point where U.S. Highway 17 now intersects with Interstate 95. As a result, the Bremer vehicle crossed Highway 17 into the path of the south-bound station wagon which allegedly had come to a stop. Negligence is also claimed in driving at an excessive speed under the highway construction conditions existing at that time and place.

## II.

Bremer's third-party complaint seeks judgment against Hammet Company for all sums that may be adjudged against it in the litigation. It is alleged by the defendants that Hammet was engaged as contractor in the road construction being carried on at the time and place of the collision; that Hammet's employees directed the Bremer vehicle through the construction area; that the highway at that point was negligently designed and constituted a hazard; that traffic control devices were not provided as required by the South Carolina Manual on Uniform Traffic Control Devices for Streets and Highways, 1972; and that such negligence caused the Bremer truck to jackknife and cross the road into the path of the station wagon driven by Riordan.

Hammet has moved to dismiss the third-party action on the ground of lack of personal and subject matter jurisdiction over it in Georgia.

## III.

Discussion of that question necessitates a more detailed factual setting. Hammet's motion to dismiss the third-party action against it is supported by an affidavit stating that there has been no corporate activity by the third-party defendant in Georgia. Hammet's contention is summarized in the motion of the third-party defendant to dismiss as follows:

"Defendant is not subject to the jurisdiction of this Court in that it was not doing business in the State of Georgia at the time of the incident in question and has not done business in Georgia subsequent thereto and does not presently do business in Georgia, said third party defendant has not solicited and does not solicit business within the State of Georgia, has not engaged and does not engage in any other persistent course of conduct and has not derived and does not derive substantial goods used or consumed or services rendered, in the State of Georgia."

The argument by Hammet is directed at the claim that personal jurisdiction can be obtained under the Georgia "Long-Arm" statute. Ga.Code Ann. § 24–113.1. However, this is neither here nor there since counsel for the third-party plaintiff does not rely on that statute. They contend that the "third-party defendant is a resident of Georgia for jurisdictional purposes and is subject to the process and jurisdiction" of this Court.[3] What Bremer argues is that Hammet registered with the Secretary of State to transact business in Georgia which subjects it to suit even though the cause of action arose outside this State.

No foreign corporation shall have the right to transact business in Georgia without a certificate of authority to do so from the Secretary of State—"except that when another statute of this State requires foreign corporations of a particular class to

---

**3.** Jurisdiction over Hammet could not be obtained by service under Georgia's Long-Arm statute since no tortious act or omission was committed in this State. Ga.Code Ann. § 24–113.1(b). If the collision had occurred in Geor-

gia, the law permits resort to that statute in a third-party action for contribution. *Gosser v. The Diplomat Restaurant, Inc.*, 125 Ga.App. 620, 622–23, 188 S.E.2d 412.

qualify thereunder to transact business in this State the requirements of such other statute shall govern." Ga.Code Ann. § 22–1401(a). In order for a foreign corporation to qualify to transact business in Georgia, it must make an application to the Secretary of State setting forth certain information which include filing a copy of the articles of incorporation and amendments; amount of issued stock; and capital expressed in dollars; and the designation of a proposed registered agent. § 22–1405(a)(5). The Georgia Act of 1968 conforms to the Model Corporation Act.

## IV.

In 1961 the General Assembly enacted a statute dealing with nonresident contractors. See Ga.Code Ann. § 92–401 et seq.[4] The Act requires registration by the foreign contractor for contracts to be performed in Georgia. §§ 92–403, 407. The purpose of such legislation is thus expressed in the Act (§ 92–402):

> "To the end that the State of Georgia and the political subdivisions thereof may receive all reports pertaining to and taxes due thereon in every instance, including contributions due under the Employment Security Law, contractors, who are nonresidents of this State, desiring to engage in, prosecute, follow or carry on the business of contracting as defined in this Chapter shall register with the State Revenue Commissioner for each contract where the total contract price or compensation to be received amounts to more than $10,000."

The Act requires the registration of contracts of foreign contractors before the making or performance thereof and the furnishing of a bond which shall be conditioned upon payment of all taxes (including contributions under the Employment Security Law) due the State and its political subdivisions. Ga.Code Ann. §§ 92–401 et seq. Apparently such a bond was furnished by Hammet. The nonresident contractor shall

appoint the *Secretary of the State of Georgia* as the agent for service of all lawful process against it in proceedings for taxes accruing on account of the performance of such contract. Such agency designation shall be of the same legal force and validity as if served upon the contractor personally within the State. Ga.Code Ann. §§ 92–403, 404.

In respect to the qualification of Hammet Company, Inc., to do business in Georgia, counsel for the third-party defendants have filed a certified copy of the documents on file in the office of the Secretary of State pertaining to the Florida corporation. It appears that in 1964 Hammet Company, Inc. filed with the Secretary of State a resolution appointing Frank W. Swift of Atlanta as designated agent for service in Georgia. (Incidentally, Mr. Swift was the agent served with the third-party process in the instant case.)

The information furnished to the Secretary of State included the charter and amendments of Hammet Company, Inc.; the initial capital; the names and addresses of the directors, etc. Such report appears on a form captioned and headed "NONRESIDENT CONTRACTOR'S CONSENT TO SERVICE OF PROCESS."

Two basic legal issues arise out of the record and statutes before this Court in regard to jurisdiction over the third-party action against Hammet. They are:

1. Whether Georgia's foreign corporation statute and the appointment of an agent for service of process required thereunder confers personal jurisdiction over nonresident corporations in all suits in torts or contract despite the total lack of any connection with Georgia except the fact that two defendants in the main case are Georgia residents.

2. If so, does the qualification of a foreign contractor under the Georgia Nonresident Contractors Act of 1961 and the designation of an agent for service who is not

---

4. In 1978 this Act was reenacted as part of the Chapter on specific, business, and occupation taxes effective January 1, 1980. Ga.Laws, 1978, vol. 1, pp. 735–738; Code § 91A–6101 *et seq.*

the Secretary of State (as called for by that statute) have the effect of creating general jurisdiction over transitory actions in the Georgia courts independent of any nexus with this State? Or does registration by such a Nonresident Contractor merely for the purpose of compliance with the Act restrict the appointment of an agent for service to the function of service of process in suits to recover taxes due by such foreign contractor to this State or its subdivisions?

## V.

Under the *Erie* doctrine, Georgia law controls the legal questions presented by the statutes discussed above. As so often occurs in diversity cases, it proves an illusion. Dearth and famine characterize the adjudications in this State in respect to the two points of law posed above. The decisions are frequently eroded by contrary authority or adumbrated by distinctions drawn by our appellate courts. There is nothing a federal court can do except play the guessing game if it decides the question of Georgia law involved in the challenge by Hammet of the jurisdiction of its courts in the third-party action against it.

### (1)

*The Qualification of Foreign Corporations to Transact Business in Georgia and the Designation of Agents for Service of Process*

Prior to 1946 no statute regulated the qualification and conditions for foreign corporations doing business in Georgia. General rules of law governed jurisdiction over suits in the courts of this State filed against nonresident corporations.

In 1931 the Supreme Court of Georgia ruled that a "suit on a transitory cause of action against a nonresident corporation, is not within the jurisdiction of Georgia courts, unless . . . the action grows out of business transacted by the defendant, which business must be a part of the business for which it was organized, or the cause of action must bear a relation to such business conducted in this state . . . ." See *Louisiana State Rice Milling Company Incorporated v. Mente & Company Incorporated*, 173 Ga. 1, at p. 9, 159 S.E. 497, at p. 500. However, in *Southern Railway Company v. Parker*, 194 Ga. 94, 21 S.E.2d 94, the Court declined to follow *Louisiana Milling Company* (it was not a full bench decision) and appears to have held that while the plaintiff's injury was not connected with business in Georgia, such connection was not essential to jurisdiction against the foreign corporation. At p. 103, 21 S.E.2d at p. 94.[5]

In 1946 the General Assembly regulated the doing of business in Georgia by undomesticated foreign corporations. The Act required appointment of an agent for service of process. If no agent should be designated, service could be made upon the Secretary of State "in connection with any action or proceedings in the courts of this State *growing out of or based upon any business done in this State*." Ga.Code Ann. § 22–1507. (Italics added.) Obviously, if such limitation applied to substitute service on the Secretary of State, same was likewise applicable to service on a designated agent. The 1946 legislation superceded the rule, whatever it was, debated at length in *Reeves v. Southern Railway Company*, 121 Ga. 561, 49 S.E. 674; *Louisiana Milling Company* and in *Parker*. However, no legislative history is available to aid in discovering the intent of the lawmakers.

In 1968 the General Assembly adopted, with minor changes, the Model Business

---

**5.** In *Lee v. Acme Freight Lines, Inc.*, 54 F.Supp. 397, 398 (S.D., Ga.), Judge Lovett pointed out that "It is not without precedent that a citizen of a foreign state seeks relief in the courts of Georgia against another citizen of his own or a different state (not Georgia) on a transitory cause of action arising out of, and unrelated to the business done in, this state . . . ." In *Southern Railway Company v. Parker, supra*, the Supreme Court by its affirmance of the decision of the Court of Appeals (reported in 66 Ga.App. 295, 17 S.E.2d 750) inferentially approved the latter's apparent view that the operation of the railroad engine had to involve the defendant's business in Georgia if jurisdiction was to exist in the courts of this State. At 301, 17 S.E.2d 750.

Corporate Act. See revised issue, 1964, Section 99 *et seq.*; Ga.Code Ann. § 22–401 *et seq.* A certificate of authority is required for a foreign corporation to transact business in Georgia along with appointment of an agent for service. The Act of 1968 is silent as to whether it permits service of a transitory action against the foreign corporation arising outside this State and unrelated to any business transacted here.

■ Again, there is no Georgia decisional law or beacon of legislative history to guide a federal court. I cannot agree, however, with the apparent position of Bremer's counsel that the mere appointment by a foreign corporation of a statutory agent to receive service of process subjects it, without more, to suit in Georgia on a transitory action upon the theory that the designated agent is tantamount to a resident employee or agent of the nonresident corporation conducting its business in this State.

Meanwhile, in 1945 a federal due process contention had taken root in the Supreme Court of the United States.

ENTER *INTERNATIONAL SHOE CO.* AND *DENCKLA* BEARING THE "MINIMAL CONTACTS" DOCTRINE:

In *International Shoe Co. v. State of Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 the Supreme Court said that due process prevented a binding judgment being rendered "*in personam* against an individual or corporate defendant with which the State has no contacts, ties or relations." They must be of a degree that does not offend "traditional notions of fair play and substantial justice." At 316, 321, 66 S.Ct. at 158. In *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, the Supreme Court reiterated the rule that a defendant may not be called on to defend an action in a foreign tribunal "unless he has had the 'minimal contacts' with the State that are a prerequisite to its exercise of power over him." At 251, 78 S.Ct. at 1238.

The decision by the Fourth Circuit in *Grevas v. M/V Olympic Pegasus*, 557 F.2d 65, cert. den. 434 U.S. 969, 98 S.Ct. 515, 54 L.Ed.2d 456, was rendered in an admiralty case but the facts and ruling offer a fair analogue to the case before this Court. The Fourth Circuit said:

"Plaintiff is a Greek citizen whose only connection with Virginia was a three-month hospitalization in a federal hospital in Norfolk. His cause of action arose outside of Virginia and his injuries have no connection with any of defendant's activities in Virginia. Where a plaintiff is a stranger to the forum state and his injuries did not occur in the state or arise out of the foreign corporation's activities in the state, the contacts between the corporation and the forum state must be fairly substantial before in personam jurisdiction over the corporation may be imposed without offending the notions of fairness and justice inherent in due process." At p. 68.

I will return to the subject under discussion after some comments on the effect upon jurisdiction over Hammet under the Nonresident Contractors Act of 1961.

## (2)

### *Matter of Registration by Hammet Under Nonresident Contractors Act*

This issue is much narrower in scope than the one just discussed. They cross paths, however, at the point of "minimal contacts". I have already sketched the primary facts as related to the Nonresident Contractor feature of this case. As stated, the Act of 1961 was passed in order to assure payment of taxes by a resident contractor due to Georgia or its subdivisions. In 1964 Hammet qualified under that statute to perform construction contracts in Georgia. The Act requires the written appointment of the Secretary of State as the agent for service of process on a nonresident contractor.[6] It makes no provision for

---

**6.** It has been held that a "Consent to Service" filed with the Secretary of State under the

Georgia Securities Act of 1957 is applicable only in the case of actions arising out of the

the designation of any other person than that official. However, the Hammet Company went further. It appointed an agent upon whom service could be made who was not the Secretary of State.

For a foreign corporation to qualify to do business under the Corporation Act of 1946 required the same information as the Nonresident Contractor statute. In effect Hammet furnished the necessary corporate data in complying with the Act of 1961. Possibly it meant the qualification to serve a dual purpose. But that is not at all clear. It is hard to understand how Hammet would qualify to perform construction work in Georgia without supposing that it also had to register under the Act of 1946 which called for registration with the Secretary of State as an undomesticated foreign corporation in order to do business in Georgia. Whether Hammet ever did any work in Georgia is unclear. It is not disputed that it has transacted no business in this State for some years.

The general Corporation statute of 1968 requiring a certificate of authority for a foreign corporation to transact business here makes an exception in the instance of one belonging to a particular class. Ga. Code Ann. § 22–1401(a). But the Nonresident Contractor's law with its highly limited application certainly cannot be read into an Act prescribing the conditions under which foreign corporations in general are permitted to transact business in Georgia.

## VI.

From any difficulty or dilemma resulting from the jurisdictional question there is a safe way around. It is practical and desirable under the circumstances of this case.

For this Court to rule in the dark on that troublesome issue and decide that there is no jurisdiction as to Hammet would only multiply the procedural and other problems in this litigation.

I have decided to transfer the action to the United States District Court for the District of South Carolina in the interest of justice, pursuant to 28 U.S.C. § 1404(a). That Court has subject matter jurisdiction. The legal issues arising out of the Georgia corporation statutes will vanish completely with a transfer to South Carolina. The district court in that State will not have to deal with or decide that issue.

While the correct procedure for a transfer is by motion, the judge can order same on his own initiative. 15 Wright-Miller-Cooper, *Federal Practice and Procedure* (1976) § 3844, pp. 208–209. See *I–T–E Circuit Breaker Company v. Becker*, 343 F.2d 361, 363 (8th Cir.).

Following the transfer of the three cases, service can be effected on Hammet in accordance with South Carolina's "long-arm" statute which provides that personal service of summons may be made outside the State on a nonresident corporation in any of the several modes prescribed. See S.C.Code § 36–2–802.

It is true that under the law of South Carolina a joint tortfeasor is not permitted to bring into the case another tortfeasor by third-party action. *Causey v. Burgess*, 236 F.Supp. 326 (D., S.C.). However, that rule is procedural and not substantive. Rule 14, F.R.Civ.P. controls. Hammet may be sued in South Carolina as a third-party defendant. See *Agrashell, Inc. v. Bernard Sirrota Company*, 344 F.2d 583, 585 (2d Cir.); *Fawvor v. Texaco, Inc.*, 546 F.2d 636, 638 (5th Cir.); *Gosser v. Diplomat Restaurant, Inc., supra*, 125 Ga.App. 620, 188 S.E.2d 412.

More than that, if plaintiffs desire they will be able, after the transfer (with permission of the District Court), to join Hammet as a defendant in the *main case*, serving that Florida corporation in the manner provided. One of the factors in a transfer under § 1404(a) is the resulting ability to join third parties in the transferee court.

---

sale of securities. It does not constitute consent of the nonresident corporation to service in all kinds of suits that might be brought against it. *Gold v. Pioneer Fund, Inc.*, 107 Ga.App. 855, 857–58, 132 S.E.2d 144.

See *United States v. Casey*, 420 F.Supp. 273, 276 (S.D., Ga.); *3A Moore's Federal Practice* ¶ 19.04 [4.–2].

## VII.

█ Where a court acting on its initiative orders a transfer of a case pursuant to 28 U.S.C. § 1404(a), prior notice should be given to counsel, 15 Wright-Miller-Cooper, *Federal Practice and Procedure* § 3844, p. 209; *Swindell-Dressler Corporation v. Dumbauld*, 308 F.2d 267, 273–74 (3rd Cir.).

On March 1st this Court informed the attorneys in writing that a transfer was being considered and that objections thereto could be made known by letter.

Bremer's attorney "strenuously" objects to the proposed change of venue. He contends that the South Carolina law is dubious as to whether service can be perfected there either on Bremer or Hammet or both. No authority is cited in support of what this Court does not believe to be the law of that State. Counsel blandly argues that its "only contact" is "the fortuitous circumstance that the accident occurred in South Carolina."

Plaintiff's counsel has made no objection in writing but it is noted in the letter of Bremer's attorney that "the original plaintiffs and the primary defendants" object to a transfer. I assume that he is speaking for Mr. Bergen, who represents the plaintiffs, with his consent. The attorney for Hammet has interposed no objection.

Apparently counsel for plaintiffs and for Bremer do not relish the idea of trying this case in the inhospitable clime of South Carolina. However, the litigation itself will be quite at home on that side of the Savannah River. Except for the Georgia jurisdictional issue concerning Hammet (which will no longer exist when this Order is signed) and the fact that Bremer is a corporation of this State with its headquarters at Savannah, Georgia has no connection with the controversy. The case arose in South Carolina where plaintiffs were injured. Hammet had an important project under construction at Hardeeville and at the time of the accident Bremer's truck was hauling supplies to the job site. The applicable substantive law is that of South Carolina where the injury occurred. *Griffin v. Planters Chemical Corporation*, 302 F.Supp. 937, 943 (D., S.C.).

The transfer to South Carolina will work no real inconvenience to witnesses or the parties.[7] Hardeeville is only 75 miles from Charleston which is 105 miles from Savannah. The important thing, however, is that a trial in South Carolina will bring all the parties before the Court there at one time and one trial. Only the law of that State will be involved. "The question of convenience of parties and witnesses under § 1404(a) is one which must be measured in terms of 'the interest of justice' in relation to the situation which is involved and on the basis of proper judicial discretion exercised as to its whole." *I–T–E Circuit Breaker Company v. Regan*, 348 F.2d 403, 405 (8th Cir.).

## ORDER

Judgment will be entered, in accordance with this Opinion, transferring the three actions pending in this Court to the United States District Court for South Carolina at Charleston.

The statement of plaintiffs' counsel that this Court entered an order on September 19, 1978, staying discovery in the litigation is incorrect. If any such oral direction was given by this Court, the stay is hereby vacated.

---

7. I am familiar with the fact that the Local Rule in that District requires the association of local counsel in the case.