**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF WARNER ROBINS, GEORGIA, Plaintiff,**

v.

**Darryl D. BERGER, et al., Defendants.**

**Civ. A. No. 86–355–1–MAC.**

United States District Court,
M.D. Georgia,
Macon Division.

Nov. 9, 1987.

Morris W. Macey, Macey, Wilensky, Cohen, Phillip A. Bradley, Long, Aldridge & Norman, Atlanta, Ga., for plaintiff.

Sally C. Quillian, Ralph B. Levy and Frank C. Jones, King & Spalding, Atlanta, Ga., for defendants.

FITZPATRICK, District Judge.

Pending before the court are Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Defendants' Motion to Dismiss for Failure to Join an Indispensable

Party, and Defendants' alternative Motion to Transfer this action to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404(a). The court heard oral argument on these motions on October 30, 1987. The decision of the court is to transfer this action to the Eastern District of Louisiana, and therefore, the court finds it unnecessary to address the merits of Defendants' motions to dismiss. The court's findings of fact and conclusions of law are set forth below.

## FINDING OF FACT

This action arises from an unpaid $37 million loan made by First Federal Savings and Loan Association of Warner Robins, Georgia (First Federal) to Delta Towers, Ltd. (Delta), a Georgia limited partnership. Defendants Darryl D. Berger and David R. Burrus are residents of New Orleans, Louisiana, and former owners of a high-rise apartment property in New Orleans. Mr. Burrus' wife also owned an interest in the property.

On November 25, 1981, Defendants and Mrs. Burrus conveyed the New Orleans property to Delta. The terms of the agreement contemplated that Delta would convert the apartment complex into a hotel. The sale of the property was closed under a contractual escrow arrangement. At the time of this initial closing, Delta delivered in escrow as part of the purchase price, three nonnegotiable promissory notes in an aggregate original principal amount of approximately $21.5 million. The primary reason for closing the sale in escrow was to give Delta sufficient time to secure a loan for the purchase of the property.

In the early part of 1982, a broker contacted First Federal and suggested that First Federal consider making a loan to Delta to finance the purchase and renovation of the property. In June of 1982, two representatives of First Federal traveled to New Orleans to gather information concerning the proposed loan. These representatives were met at the airport by Mr. Burrus' chauffeur and driven to the property in Mr. Burrus' Rolls Royce. While in New Orleans, the First Federal representatives discussed the proposed loan with Mr. Burrus and Mr. Berger.

Following this visit, Mr. Burrus and First Federal had several phone conversations concerning the proposed loan. First Federal contends that Mr. Burrus made certain representations during the phone conversations upon which First Federal relied in reaching its decision to loan money to Delta. In particular First Federal claims that Mr. Burrus stated that Defendants would subordinate their interest in the property to the first mortgage that First Federal would take on the property.

The November, 1981 escrow sale was broken at a final closing conducted in New Orleans on August 7, 1982. At this closing Defendants and Mrs. Burrus conveyed the property to Delta, and Delta borrowed $27.5 million from First Federal. In addition, Delta executed an Act of Modification with Defendants and Mrs. Burrus which contemplated further funding by First Federal up to a total of $30 million. All documents relating to the escrow arrangement and the August, 1982 closing contained a choice of law clause stating that Louisiana law would govern the agreements.

In 1983 Delta needed additional working capital above the $30 million previously advanced. First Federal contends that Mr. Burrus contacted First Federal regarding the possibility of advancing an additional loan to Delta Towers. Sometime before September 1, 1983, First Federal invited Mr. Burrus and Mr. Berger to attend a meeting in Atlanta, Georgia between representatives of First Federal and Delta to discuss the additional loan. Mr. Burrus attended the meeting; however, no agreement was reached and Mr. Burrus returned to New Orleans the same day. This occasion was the only time either Mr. Burrus or Mr. Berger traveled into Georgia to meet with First Federal concerning the Delta Towers project.

On September 1, 1983 First Federal entered into a new Loan Agreement with Delta agreeing to lend Delta an additional $7 million. At the September, 1983 closing, Mr. Burrus signed various documents for himself and for Mr. Berger pursuant to a

power of attorney given to Mr. Burrus by Mr. Berger. All the documents relating to the September, 1983 closing contained a Louisiana choice of law clause. Mrs. Burrus was not in attendance at the closing, nor did she sign any of the documents executed at the closing. Mrs. Burrus had signed all prior documents concerning the subject of subordination to First Federal.

Delta subsequently went into default on all of its mortgage debt for the hotel project. Delta's default spawned much litigation in the courts of Louisiana. On September 18, 1984 First Federal filed a foreclosure action against Delta in the Civil District Court for the Parish of Orleans in New Orleans. On May 17, 1985 Delta filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Eastern District of Louisiana in New Orleans. On March 6, 1986 First Federal filed and the court signed a Rule to Show Cause in the foreclosure action which required Mr. and Mrs. Burrus, Mr. Berger and others to assert any claims in the foreclosure action by May 29, 1986, or effectively thereafter be barred from contesting the priority of First Federal's mortgage. In response to the court's order, Mr. and Mrs. Burrus and Mr. Berger filed a Petition of Intervention in the Foreclosure Action. As many as four different lawsuits relating to Delta's default have been filed in Louisiana. The foreclosure action and bankruptcy proceeding are still pending in the courts of Louisiana.

## CONCLUSIONS OF LAW

■ The statutory venue transfer provision of 28 U.S.C. § 1404(a) provides as follows:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) (1982). A district court is vested with wide discretion in determining whether an action should be transferred. *Weber v. Coney*, 642 F.2d 91, 93 (5th Cir.1981). Moreover, section 1404(a) permits the transfer of a case with proper venue even if no personal jurisdiction exists in the transferring court. *Aguacate Consol. Mines, Inc. v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir.1978).

To transfer an action under 1404(a), the court must first determine whether the action could have been brought originally in the transferee court. In the instant action, venue would be proper in the Eastern District of Louisiana because both Defendants reside in New Orleans, Louisiana. Additionally, the Eastern District of Louisiana has subject matter jurisdiction based on diversity of citizenship, and Defendants are amenable to process because they are residents of New Orleans.

■ After concluding that the case could have been brought in the transferee court, the transferor court must determine whether the interests of justice would be served by a transfer of venue. The burden is on the moving party to establish that a balance of the 1404(a) interests favors the transfer. *Dove v. Massachusetts Mutual Life Ins. Co.*, 509 F.Supp. 248, 250 (S.D.Ga. 1981) (citing *Southeastern Equip. Co., Inc. v. Union Camp Corp.*, 498 F.Supp. 164, 165 (S.D.Ga.1980); *A.C. Samford, Inc. v. United States*, 226 F.Supp. 72, 77 (M.D.Ga. 1963).

■ The court is mindful that some initial weight must be given to First Federal's choice of forum. Binding precedent for this court holds, however, that a plaintiff's forum choice is only one of several factors in determining the most convenient forum, *Garner v. Wolfinbarger*, 433 F.2d 117 (5th Cir.1970), and may be disturbed if outweighed by other considerations. *See Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir.1981).

First Federal asserts that a plaintiff's choice of forum is paramount, especially where the plaintiff's residence or principal place of business is located in the chosen forum. In support of this argument, First Federal cites the court to *Grey v. Continental Marketing Associates, Inc.*, 315 F.Supp. 826 (N.D.Ga.1970). The *Grey* court, however, noted two other criteria that should be given *equal* weight to a

plaintiff's choice of forum: (1) a showing that the witnesses who would be inconvenienced are key witnesses and their testimony cannot be effectively presented by depositions; and (2) whether other actions invoking the same or substantially similar subject matter are pending in the transferee district. *Id.*, 315 F.Supp. at 831. In the instant action, many of the key witnesses such as Mr. and Mrs. Burrus and Mr. Berger are residing in New Orleans. But more importantly, at least two actions involving Delta's default are pending in New Orleans, Louisiana. The foreclosure action is scheduled for trial in New Orleans this month, and in preparation for that trial, significant discovery has been conducted. Moreover, the determinations made in the foreclosure action regarding the interests of the parties in Delta Towers will have a direct impact in First Federal's suit against Mr. Burrus and Mr. Berger. Thus, two factors that *Grey* cites as being equally important to a plaintiff's forum choice actually support a transfer in this case.

The court notes that an additional factor supporting a transfer of this action to the Eastern District of Louisiana involves an uncertainty as to whether this court could in fact exercise jurisdiction over Mr. Burrus and Mr. Berger if the case were retained. It appears that Mr. Berger has neither entered the State of Georgia to transact business nor committed a tortious injury in the State. To assert jurisdiction over both Defendants under Georgia's Long–Arm Statute, it seems that the court would need to accept First Federal's argument that Mr. Burrus and Mr. Berger were acting as partners, even though no document bears any evidence of a partnership existing between Defendants. The relevant case law provides a less than clear answer as to whether personal jurisdiction exists over these Defendants.

The court notes the opinion and reasoning of Judge Lawrence of the Southern District of Georgia in *Riordan v. W.J. Bremer, Inc.*, 466 F.Supp. 411 (S.D.Ga. 1979). When faced with a similarly thorny jurisdictional question regarding Georgia corporations, Judge Lawrence decided to transfer the case rather than "play the guessing game" of unraveling the complicated jurisdictional issue. *Id.* at 415. Supporting his decision to transfer that case under section 1404(a), Judge Lawrence stated:

> From any difficulty or dilemma resulting from the jurisdictional question there is a safe way around. It is practical and desirable under the circumstances of this case.
>
> For this Court to rule in the dark on that troublesome issue and decide that there is no jurisdiction as to Hammett would only multiply the procedural and other problems in this litigation.
>
> ... The legal issues arising out of the Georgia corporation statutes will vanish completely with a transfer to South Carolina. The district court in that State will not have to deal with or decide that issue.

*Id.* at 417. The court is aware that disposal of the jurisdictional issues upon transfer is only a factor to consider. The court finds that in the instant case, however, the interests of justice are best served by transferring the case and thereby avoiding the possibility that a substantial amount of time and money would be expended in deciding and appealing this jurisdictional question. The interests of justice require that a court consider "the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be most 'easy, expeditious, and inexpensive.'" *Howell*, 650 F.2d at 616 (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

Yet another factor favoring transfer is the realization that this court may not have jurisdiction over an important party in this action, Mrs. Burrus. One aspect of First Federal's claim is that Mr. Burrus fraudulently induced First Federal to sign certain documents knowing that he could later challenge those documents because they did not include Mrs. Burrus' signature. Without fully considering the question, it appears likely that this court does not have jurisdiction over Mrs. Burrus. She is a resident of Louisiana and has never entered the State of Georgia in connection

with the Delta Towers project. Moreover, Mrs. Burrus has never corresponded with anyone in Georgia regarding the property, nor has she made or received any telephone calls to or from anyone in Georgia with respect to that property.

Although the court has not concluded that Mrs. Burrus is an indispensable party at this time, if the court were to retain the case, it may later decide to dismiss based on First Federal's failure to join Mrs. Burrus. Such a dismissal would almost certainly result in a re-filing of this lawsuit in the Eastern District of Louisiana. Upon a transfer of this action, however, the issue of a failure to join Mrs. Burrus becomes moot. Other courts have likewise stated that the ability to join parties is an important consideration in a 1404(a) transfer. *See Sierra Club v. Leathers*, 754 F.2d 952, 954 (11th Cir.1985); *United States v. Casey*, 420 F.Supp. 273, 277 (S.D.Ga.1976) ("important although not conclusive consideration in favor of the party seeking transfer that third parties cannot be joined in the pending action in the transferring forum").

The court also notes that the following factors, all of which should be given some weight in a decision to transfer, weigh in favor of transferring this action to the Eastern District of Louisiana. First, the Civil Code of Louisiana will be governing in this action since all the executed documents contained a Louisiana choice of law clause. Although the possibility that an action will be controlled by the law of another state is generally accorded little weight, *Grey*, 315 F.Supp. at 831, the Supreme Court has noted the advantage of having a case decided by federal judges who are familiar with the controlling state law. *Van Dusen v. Barrack*, 376 U.S. 612, 645, 84 S.Ct. 805, 823–24, 11 L.Ed.2d 945 (1964) (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). Second, all relevant transactions concerning this suit took place in Louisiana, all documents were executed and to be performed in Louisiana, and the subject matter of the suit is located in Louisiana. Therefore, the court feels that the State of Louisiana has a greater interest in hearing this action than does the State of Georgia. Third, all parties who have an interest in this suit are subject to or have submitted to the jurisdiction of the Louisiana courts. The court finds that the interests of justice are furthered by providing a forum where all interested persons can be brought before the court at one time and in one trial.

■ Lastly, Plaintiff argues that the Louisiana lawyers hired to represent it in the other Delta Towers' suits, now or formerly pending in New Orleans, rendered poor advice and representation. Plaintiff urges that this should be a factor for the court's consideration in deciding whether to send the instant case to the Eastern District of Louisiana for trial. This argument is not persuasive as the court takes judicial notice that there are many fine lawyers in the city of New Orleans, many of whom would be willing to represent Plaintiff. The court cannot avoid the fact that Plaintiff, a savings and loan association in a medium-sized Georgia city, made a decision after due deliberation to lend $30 million to a group of people it did not know in a large city more than 600 miles away. Having made this decision, Plaintiff must accept the reasonable conclusion that this complex matter should be litigated in a venue where both the court and the lawyers are thoroughly familiar with the Code Napoleon and other nuances of Louisiana law.

After a careful consideration of the relevant factors, the court concludes that Defendants have sustained their burden that a change of venue in this action is convenient to the parties and witnesses and in the interest of justice. The balance of factors weighs strongly in favor of transfer. Therefore, this case shall be transferred to the Eastern District of Louisiana. Accordingly, Defendants' Motion for Transfer pursuant to 28 U.S.C. § 1404(a) is hereby GRANTED. Defendant's Motion for a Protective Order is carried with the case to the Eastern District of Louisiana.